IN THE MATTER OF HATTIE HOGAN

No. 7627DC641

(Filed 2 March 1977)

1. **Appeal and Error § 9— commitment to mental health facility — appeal not moot**

 Appeal of a person involuntarily committed to a mental health care facility was not moot although the commitment period had expired.

2. **Insane Persons § 1— report of absent physician — denial of confrontation and cross-examination**

 In a proceeding for involuntary commitment to a mental health care facility, the admission of a written report signed and sworn to by a physician who was not present at the hearing denied respondent her right to confront and cross-examine the physician. G.S. 122-58.7(e).

3. **Insane Persons § 1— mental illness — imminent danger — preoccupation with religion**

 A finding that respondent was "preoccupied with religious subjects" furnished no support for the court's ultimate finding either that respondent was mentally ill or that she was imminently dangerous to herself or others.

**4. Insane Persons § 1— imminent danger to self or others — insufficiency of findings**

While findings that respondent had delusions as to the extent of the danger posed by the Ku Klux Klan, that she misinterpreted stimuli, and that she was out of touch with reality may have furnished support for the court's ultimate finding that respondent was mentally ill, they furnished no support for the court's alternate finding that she was inebriate or for the court's ultimate finding that she was imminently dangerous to herself or others.

**5. Insane Persons § 1— imminent danger to self or others — insufficiency of testimony**

A physician's testimony that he arrived at the opinion that respondent was imminently dangerous to herself or others because he felt that her persistence in trying to convert someone on the street might cause that person to resist the idea, so that "they could become physically aggressive toward her" did not support the court's finding that respondent was imminently dangerous to herself or others.

APPEAL by respondent from *Bulwinkle, Judge.* Order entered 15 April 1976 in District Court, GASTON County. Heard in the Court of Appeals 13 January 1977.

On 12 April 1976, A. W. Michalak, an officer of the Gastonia Police Department, appeared before a magistrate and swore to a petition for involuntary commitment against respondent, Hattie Hogan, alleging that respondent was a mentally ill or inebriate person who was imminently dangerous to herself or others. The facts upon which this opinion was based were stated in the petition to be that respondent:

> "Gets upon the public streets of the City of Gastonia, blocks people from walking, preaching loud words, refuses to leave after being directed by Gastonia City Police, is in a mentally ill state of mind and is imminently dangerous to herself and others and petitioner says she needs medical treatment."

Based on this petition, the magistrate found that there were reasonable grounds to believe that the facts alleged in the petition were true and that respondent was probably mentally ill or inebriate and imminently dangerous to herself or others. Accordingly, the magistrate issued a custody order authorizing law enforcement personnel to take respondent into custody for examination by a qualified physician in accord with the provisions of G.S. 122-58.4. Pursuant to this order, respondent was taken into custody and was examined by Dr. Zack Russ, Jr., a

psychiatrist at the Gaston County Mental Health Clinic. Dr. Russ found respondent to be mentally ill and imminently dangerous to herself or others, and he recommended she be committed to Broughton Hospital. She was taken to Broughton Hospital, where she was examined on the afternoon of 12 April 1976 by Dr. William P. Robeson, who recommended hospital treatment.

On 15 April 1976 the hearing prescribed by G.S. 122-58.7 was held in district court. Over objection of respondent's counsel, the State introduced as its only evidence the written report signed and sworn to by Dr. Robeson which was based on his examination of respondent made at Broughton Hospital on the afternoon of 12 April 1976.

Respondent presented as her only witness Dr. Russ, who testified that he had examined respondent on 12 April 1976 and that he found respondent

> "to be religiously preoccupied; she had ideas of persecution; delusions of grandeur. She was quite evasive and tangential in her responses. She had poor impulse control and her judgment and insight were impaired. I thought she could not take care of herself because of her impaired judgment, and that she needed to be hospitalized for her own care and protection."

On being asked why he had concluded respondent was a danger to herself and others, Dr. Russ replied:

> "I thought because of her impaired judgment and lack of insight, and from her own statements, her persistence in trying to preach on the streets even without a license, and the fact she had gone to the City Hall for a license and they had refused to give her one—and she couldn't understand it—why they wouldn't. That were she to persist in this type of behavior that it would be detrimental to her welfare.
>
> . . . "[W]ith her attitude that she was expressing at that time, if she persisted in trying to convert someone on the street and they would resist the idea, they could become physically aggressive towards her.
>
> *     *     *
>
> I didn't get any indication that she was aggressively motivated in that sense of being physically violent."

The court made findings as follows:

"That the Respondent has delusions of danger imposed by the Klu Klux Klan (sic) for the nation as a whole and the world; That she is preoccupied with religious subjects; That she misinterprets stimuli; That she is out of touch with reality."

Based on these findings of fact, the court concluded "as a matter of law" that the respondent was "mentally ill or inebriate, and imminently dangerous to herself or others," and ordered her committed to Broughton Hospital for a period not to exceed 90 days.

From this order, respondent appealed.

*Attorney General Edmisten by Associate Attorney Isaac T. Avery III for the State.*

*Assistant Public Defender Larry B. Langson for respondent appellant.*

PARKER, Judge.

[1] Included in the record is a certificate addressed to the clerk of superior court of Gaston County and signed by the Chief of Medical Services at Broughton Hosptial which states that respondent was no longer in need of hospitalization at that facility and accordingly was being unconditionally discharged on 23 April 1976. Although it thus appears that respondent has been released, her appeal is not moot. *In re Hatley,* 291 N.C. 693, 231 S.E. 2d 633 (1977); *In re Crouch,* 28 N.C. App. 354, 221 S.E. 2d 74 (1976); *In re Mostella,* 25 N.C. App. 666, 215 S.E. 2d 790 (1975); *In re Carter,* 25 N.C. App. 442, 213 S.E. 2d 409 (1975).

[2] Respondent assigns error to the admission into evidence over her objection of the written report signed and sworn to by Dr. Robeson, the physician who examined respondent at Broughton Hospital. G.S. 122-58.7(e) provides that "[c]ertified copies of reports and findings of qualified physicians and medical records of the mental health facility are admissible in evidence, but the respondent's right to confront and cross-examine witnesses shall not be denied." Here, Dr. Robeson did not appear at the hearing, and respondent was clearly denied her right to confront and cross-examine him. *In re Benton,* 26 N.C.

App. 294, 215 S.E. 2d 792 (1975). Denial of this right would at least entitle respondent to a new hearing. We do not order a new hearing, however, because more serious defects in these proceedings require reversal of the order from which appeal has been taken.

G.S. 122-58.7 (i) provides as follows:

> "To support a commitment order, the court is required to find, by clear, cogent, and convincing evidence, that the respondent is mentally ill or inebriate, and imminently dangerous to himself or others. The court shall record the facts which support its findings."

This statutory mandate requires as a condition to a valid commitment order that the district court find two distinct facts: first, that the respondent is mentally ill or inebriate, as those words are defined in G.S. 122-36; and second, that the respondent is imminently dangerous to himself or others. *In re Carter, supra.* Whether a person is mentally ill or inebriate and whether he is imminently dangerous to himself or others, present questions of fact. In the order appealed from in the present case the court purported to make these determinations as "matters of law." We will ignore the incorrect designation and treat the court's conclusions as findings of the ultimate facts required by G.S. 122-58.7 (i). The questions for our determination then become (1) whether the court's ultimate findings are indeed supported by the "facts" which the court recorded in its order as supporting its findings, and (2) whether in any event there was competent evidence to support the court's findings.

[3, 4] Directing our attention to the first question, the finding that respondent was "preoccupied with religious subjects" hardly furnishes support for an ultimate finding either that she was mentally ill or that she was imminently dangerous to herself or others. The remaining facts which the court recorded as supporting its ultimate findings, that respondent had delusions as to the extent of the danger posed by the Ku Klux Klan, that she misinterpreted stimuli, and that she was out of touch with reality, may furnish some support for the ultimate finding that she was mentally ill as those words are defined in G.S. 122-36. They furnish no support for the court's alternative finding that she was inebriate. (Indeed, there is no evidence in this record which even suggests that respondent was ever an inebriate.) More importantly, none of the facts recorded

by the court in its order furnish any support for its ultimate finding that respondent was imminently dangerous to herself or others. Thus, one of the two essential findings required for a valid commitment order is without any support from the facts recorded in the court's order.

[5] Turning our attention to the second question, whether, quite apart from the facts recorded in the court's order, there was any competent evidence from which the court could have found the essential ultimate facts required for a valid commitment order, we find that the only competent evidence presented at the hearing bearing on the question whether respondent was imminently dangerous to herself or others was contained in the testimony of Dr. Russ. Although Dr. Russ signed a statement that in his opinion respondent was imminently dangerous to herself or others, at the hearing he testified that he "didn't get any indication that she was aggressively motivated in that sense of being physically violent." Indeed, it is abundantly clear from his testimony given at the hearing that he arrived at his opinion that respondent was imminently dangerous to herself or others solely because he felt that her persistence in trying to convert someone on the street might cause that person to resist the idea, so that "they could become physically aggressive toward her." If so, it would seem more appropriate to commit her aggressor rather than the respondent. In any event, we are unable to find in this record any competent evidence to support the court's finding that respondent was imminently dangerous to herself or others. Absent that evidence,

The order appealed from is

Reversed.

Judges MARTIN and ARNOLD concur.