In re Williamson

---

IN THE MATTER OF GLORIA SHERRY WILLIAMSON

No. 774DC579

(Filed 16 May 1978)

**1. Appeal and Error § 9; Insane Persons § 1— commitment to mental hospital**
Discharge of respondent from a mental hospital does not render questions challenging the involuntary commitment proceeding moot in view of the adverse consequences which could arise therefrom, including the possibility that the commitment in this case could form the basis of a future commitment.

2. **Insane Persons § 1.2— threats by allegedly insane person—criminal standards inapplicable**

   The standards applicable to criminal threats proscribed by G.S. 14-277.1 are inapplicable to evidence of threats which might support a finding of imminent danger in an involuntary commitment proceeding.

3. **Insane Persons § 1.2— finding of imminent danger to others—sufficiency of evidence**

   Evidence that respondent destroyed various articles of furniture coupled with evidence that she threatened physical injury and death to various members of her family was sufficient to support the court's finding that respondent was imminently dangerous to others.

APPEAL by respondent from *Barnette, Judge.* Order entered 12 May 1977 in District Court, WAKE County. Heard in the Court of Appeals 6 April 1978.

This is a special proceeding instituted by petitioner, Vicki W. Huehner, for the involuntary commitment of the respondent, Gloria Sherry Williamson. On 3 May 1977, petitioner appeared before a magistrate and signed a petition for involuntary commitment stating that the respondent was a mentally ill or inebriate person who was imminently dangerous to herself or others. The petitioner alleged in her petition as facts supporting her opinion that the respondent "has a hammer in the house and breaks everything she can find," that "[s]he told her husband that if he went to sleep she would bash his brains out," and that "[s]he has threaten [sic] to kill her Daughter, Grand Daughter and Sister." Based on this petition, the magistrate issued an order directing a law enforcement officer to take the respondent into custody for a preliminary examination by a qualified physician in accordance with the provisions of G.S. 122-58.4(a). The custody order was executed, and the respondent was examined by a physician who determined that the respondent should be detained pending a hearing in the District Court. The respondent was then transported to the Dorothea Dix Hospital where she was admitted on the involuntary commitment petition.

On 12 May 1977 a hearing was conducted pursuant to G.S. 122-58.7 before a District Court Judge at the Dorothea Dix Hospital. At the hearing, the State introduced into evidence the evaluation of a physician from the Dorothea Dix Hospital which included the following:

Indications for Mental Illness or Inebriacy: Impulsive, restless, very dysphoric, irritable, Presents pressured speech, circumstancial [sic] thoughts, labile emotions. Socially appropriate, conventional, yet unable to admit to her emotional unrest. Very antagonistic about involuntary admission, refuses treatment in the hospital.

The State then presented the testimony of Teresa Williamson, a daughter of the respondent, who testified as follows:

I went to Clinton the next morning after my exam and found mother on her knees on the kitchen floor cleaning up glass. The television tube in the living room was busted, the telephone was laying on the floor, having been cut away from the wall, and glass was all over the living room, (glass from the television was around the area of the TV, some hurricane lamps were busted, along with an ashtray and a stool from the kitchen.) The iron was in the middle of it.

I asked mother what happened. At first she did not answer, but then said that my father was next door. My father came in and mother continued cleaning up. I again asked what happened and mother responded that she had broken the TV. When asked about the telephone, mother became excited, stopped cleaning for a minute, said she cut the phone and had broken some of the glass. . . .

On the phone the night before, mother had threatened to kill my father and aunt.

The petitioner, another daughter of the respondent, testified that during a telephone conversation the respondent had threatened to kill her and her son.

The respondent offered her own testimony in which she denied making any of the alleged threats and stated that her husband had broken the various items of furniture.

At the conclusion of the hearing, the trial judge entered a finding incorporating the physician's report by reference and further found "that the respondent did break the television set, lamps, various and sundry cords that caused the house to be in disarray," and "did threaten her husband, daughter and an aunt." The court then found that "[r]espondent is suffering from manic-

depressive psychosis, manic phase and is imminently dangerous to others by reason thereof." Based on these findings, the court ordered that the "respondent be committed to Dorothea Dix Hospital for a period not to exceed 30 days." Respondent appealed.

*Attorney General Edmisten, by Assistant Attorney General Isaac T. Avery III, for the State.*

*Judith L. Kornegay for the respondent appellant.*

HEDRICK, Judge.

[1] We note at the outset that it appears in the respondent's brief that she has been officially discharged from the mental health facility by order of her psychiatrist. However, it is established that her discharge does not render questions challenging the involuntary commitment proceeding moot in view of the adverse consequences which could arise therefrom, including the possibility that the commitment in this case could form the basis of a future commitment. *In re Hatley*, 291 N.C. 693, 231 S.E. 2d 633 (1977).

The controlling statute with respect to involuntary commitment proceedings, G.S. 122-58.7(i), requires the trial court to find "by clear, cogent, and convincing evidence, that the respondent is mentally ill or inebriate, and imminently dangerous to himself or others." The two distinct ultimate facts of (1) mental illness or inebriacy and (2) imminent danger must be supported by facts which are found from the evidence and recorded by the District Court. *In re Hogan*, 32 N.C. App. 429, 232 S.E. 2d 492 (1977).

The respondent in this case does not challenge the court's finding of mental illness based on the physician's examination. In her sole assignment of error brought forward and argued in her brief, she contends that the ultimate finding that the respondent is "imminently dangerous to others" is not supported by the facts recorded in the order.

[2] Pursuant to this assignment, the respondent apparently contests the admissibility of her threats as evidence that she was dangerous. She seeks to impose the standards applicable to criminal threats proscribed by G.S. 14-277.1 to evidence of threats which might support a finding of imminent danger in an involun-

tary commitment proceeding. Suffice it to say that the fundamental differences between a criminal charge based entirely on threats and an involuntary commitment in which threats merely serve as some evidence of the imminent dangerousness of the person weigh against the use of such strict standards in the latter case.

[3] In our opinion, evidence that the respondent destroyed various articles of furniture coupled with evidence that she threatened physical injury and death to various members of her family provides clear, cogent and convincing proof that her mental condition posed an imminent danger to others. Thus, we hold that the facts found by the trial court support the ultimate finding that the respondent "is imminently dangerous to others."

Affirmed.

Chief Judge BROCK and Judge MITCHELL concur.