NO. COA13-1397

NORTH CAROLINA COURT OF APPEALS

Filed:  20 May 2014

IN THE MATTER OF:
    GILBERT MOORE, JR.

                              Granville County
                              No. 12 SPC 1949

    Appeal by respondent from order entered 5 August 2013 by

Judge Amanda E. Stevenson in Granville County District Court.

Heard in the Court of Appeals 5 May 2014.

        *Roy Cooper, Attorney General, by Adam Shestak, Assistant
        Attorney General, for the State.*

        *Staples Hughes, Appellate Defender, by James R. Grant,
        Assistant Appellate Defender, for respondent-appellant.*

        MARTIN, Chief Judge.

    Respondent Gilbert Moore, Jr. appeals from the trial

court's involuntary commitment order 5 August 2013 recommitting

him for ninety days of inpatient treatment.  Respondent argues

that the trial court lacked subject-matter jurisdiction and that

the evidence does not support the trial court's ultimate

findings that respondent was a danger to himself as well as

others.

On 25 September 2012, a licensed clinical social worker in Guilford County filed an affidavit and petition to have respondent involuntarily committed. The affidavit contained the following facts:

> Mr. Moore has a history of mental illness. At present he has very disorganized speech and is not making any sense. He has reported to the crisis center multiple times this morning. He is not able to express exactly what he needs due to his mental illness. He appears to have a thought disorder or some kind of psychotic disorder. He is in need of evaluation and treatment.

The same day, a Guilford County magistrate, based on petitioner's affidavit and petition, issued a custody order and respondent was picked up by a law enforcement officer and taken to a facility for examination. Respondent was then examined by two different physicians, both of whom recommended inpatient commitment for respondent, and respondent was taken to Central Regional Hospital. After a hearing on 2 October 2012, the District Court of Granville County issued an involuntary commitment order committing respondent to thirty days of inpatient commitment and sixty days of outpatient commitment. The court recommitted respondent to ninety days of inpatient treatment on 1 November 2012. Additional involuntary commitment orders for varying durations were issued by the district court

on 31 January 2013, 4 April 2013, 13 June 2013, and 5 August 2013.

Before issuing its 5 August 2013 order, the court heard evidence as follows: Dr. Jeffrey Fahs, respondent's attending physician, testified that respondent had schizoaffective disorder. He further testified that by age forty-four respondent had been committed to state hospitals approximately twenty-seven times, and one of the reasons he was re-hospitalized so many times was because he would stop taking his medication when he was released. Dr. Fahs also thought that respondent was a danger to others; respondent was on Central Regional Hospital's alert system due to at least one altercation with another patient. Dr. Fahs, based on respondent's condition, history of violence, and the fact that no suitable discharge placement was available, recommended that respondent be recommitted for ninety days.

Esther Robie, a social worker who worked with respondent, also testified that respondent needed a proper discharge placement because his discharges have become shorter and his readmissions more frequent because he stops taking his medication during periods of discharge. In fact, in the year before respondent's 2 October 2012 involuntary commitment, he

had been admitted to hospitals on three different occasions. Ms. Robie also testified that when respondent first arrived at Central Regional Hospital he was placed in the high management unit because of his aggressive behavior.

Based on Dr. Fahs's and Ms. Robie's testimony the district court made the following findings of fact:

> 1. The respondent was admitted to this facility on 09-29-2012.
>
> 2. The respondent has a diagnosis of schizoaffective disorder with psychotic and manic symptoms. In the past, he also had delusional thinking.
>
> 3. Upon admission on September 29, 2012, he had exhibited aggressive tendencies.
>
> 4. The respondent has a history of 27 state psychiatric hospitalizations and many other non-state psychiatric hospitalizations.
>
> 5. He has a history of non-compliance with his medications outside of the hospital.
>
> 6. The respondent is at high risk of decompensation if released and without medication.
>
> 7. During his relapses, he is a danger to others.
>
> 8. Since October 2012, he has been compliant with medications. He is doing well with treatment, listens to team and is on level 5. This entitles him to off campus privileges.

9. Dr. Fahs stated he is concerned he would "relapse by the end of football season" if released without placement.

10. His readmissions are more frequent.

11. The respondent acknowledges his mental illness.

Based on these findings of fact, the trial court found that there was clear, cogent, and convincing evidence to support a finding that respondent is mentally ill and is a danger to himself and others, and ordered the recommitment of respondent as an inpatient for ninety days. Respondent appeals.

_____

Before addressing the merits of respondent's appeal we must address two preliminary matters: (1) whether to grant respondent's petition for writ of certiorari, and (2) whether respondent's appeal is moot.

First, respondent has filed a petition for writ of certiorari because his notice of appeal failed to designate "the court to which [his] appeal is taken" as required by North Carolina Rule of Appellate Procedure 3(d). A party must comply with the requirements of Rule 3 to confer jurisdiction on an appellate court. *Bailey v. State*, 353 N.C. 142, 156, 540 S.E.2d 313, 322 (2000). Thus, failure to comply with Rule 3 is a

jurisdictional default that prevents this Court "from acting in any manner other than to dismiss the appeal." *Dogwood Dev. & Mgmt. Co. v. White Oak Transp. Co.*, 362 N.C. 191, 197, 657 S.E.2d 361, 365 (2008). North Carolina Rule of Appellate Procedure 21(a)(1), however, allows us to issue a writ of certiorari under "appropriate circumstances . . . to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action." In *State v. Hammons*, __ N.C. App. __, __, 720 S.E.2d 820, 823 (2012), we exercised our discretion to allow the defendant's petition for writ of certiorari when "it [was] readily apparent that [the] defendant ha[d] lost his appeal through no fault of his own, but rather as a result of sloppy drafting of counsel." Therefore, we exercise our discretion and grant respondent's petition for writ of certiorari and address the merits of his appeal.

Next, we hold that respondent's appeal is not moot even though the ninety-day commitment period provided in the 5 August 2013 order, from which respondent appeals, has expired. Our Supreme Court has addressed the question of whether the discharge of a person who was involuntarily committed renders an appeal moot. *In re Hatley*, 291 N.C. 693, 695, 231 S.E.2d 633,

634 (1977). The Court in *Hatley* reasoned that "[t]he possibility that respondent's commitment in this case might likewise form the basis for a future commitment, along with other obvious collateral legal consequences, convinces us that this appeal is not moot." *Id.* at 695, 231 S.E.2d at 635. Respondent's appeal is not moot.

Respondent's first substantive argument is that the trial court lacked subject-matter jurisdiction to recommit him on 5 August 2013 because the 25 September 2012 affidavit and petition were fatally deficient because the facts alleged did not demonstrate that respondent met the statutory requirements for involuntary commitment. This argument fails for the reasons stated below.

While respondent claims he is challenging the subject-matter jurisdiction of the trial court to commit him, his argument appears to be that the facts in the original affidavit and petition were insufficient to demonstrate that reasonable grounds existed to believe that respondent was mentally ill and a danger to himself or others. *See* N.C. Gen. Stat. § 122C-261(a)-(b) (2013) (requiring the petitioner to state the facts that his opinion that the respondent is mentally ill and a danger to himself or others is based on, and requiring the

magistrate to determine if there are reasonable grounds to believe that the respondent is mentally ill and a danger to himself or others). Thus, respondent challenges the magistrate's 25 September 2012 determination to issue a custody order. For the reasons stated below, we hold that respondent has waived this argument.

We have previously found that N.C.G.S. § 122C-261's reasonable grounds requirement is synonymous with probable cause in the criminal context. *See, e.g.*, *In re Reed*, 39 N.C. App. 227, 229, 249 S.E.2d 864, 866 (1978) ("Reasonable grounds has been found to be synonymous with probable cause," (internal quotation marks omitted)). We have drawn this comparison because a custody order deprives a person of their liberty and therefore is analogous to a criminal proceeding, like the issuance of an arrest warrant, where a defendant is deprived of his liberty. *In re Zollicoffer*, 165 N.C. App. 462, 466, 598 S.E.2d 696, 699 (2004). In the past, we have left the analogy there, however, today we take the analogy one step further.

When there is a problem with a warrant, a defendant may waive his objection to the sufficiency of the warrant if he does not object before he enters a plea of not guilty. *State v. Green*, 251 N.C. 40, 43, 110 S.E.2d 609, 611-12 (1959); *see also*

Irving Joyner, Criminal Procedure in North Carolina § 2.4[C] (3rd ed. 2005). Based on the procedure for challenging a warrant in the criminal context, respondent should have raised his concerns about the affidavit's sufficiency during his first involuntary commitment hearing. Furthermore, while none of our involuntary commitment case law has directly addressed respondent's argument, a requirement that respondents raise issues with the affidavit, petition, or custody order in the first involuntary commitment hearing is consistent with our case law. *Reed*, 39 N.C. App. at 228, 249 S.E.2d at 865, addressed a respondent's argument that an affidavit was defective. The Court recited the facts of the case as follows:

> On the affidavit of his cousin, respondent was taken into custody. At his commitment hearing, he moved to dismiss on the ground that the petition for commitment was so vague as to violate both the statutory standard and due process, so that there could have been no finding of probable cause for issuance of the custody order.

*Id.* at 277, 249 S.E.2d at 865. Thus, the facts suggest that the respondent in *Reed* challenged the sufficiency of the affidavit during his first involuntary commitment hearing, rather than at a later recommitment hearing. Here, respondent failed to raise the issue of the sufficiency of the affidavit during the first involuntary commitment hearing, nor did the record reflect that

he raised it at any of the four recommitment hearings preceding the present appeal. Thus, we hold respondent has waived any challenge to the sufficiency of the affidavit to support the magistrate's original custody order.

Next, respondent challenges two findings of fact from the 5 August 2013 order: (1) Finding of Fact 9, and (2) the ultimate findings that respondent was a danger to himself as well as others.

Our standard of review for a recommitment order is the same as our standard of review for a commitment order. *In re Hayes*, 151 N.C. App. 27, 29, 564 S.E.2d 305, 307 ("We see no reason to distinguish the standard of review of a recommitment order from that of a commitment order."), *disc. review denied and appeal dismissed*, 356 N.C. 613, 574 S.E.2d 680 (2002). When we review a commitment order, our review is limited to determining "(1) whether the court's ultimate findings are indeed supported by the 'facts' which the court recorded in its order as supporting its findings, and (2) whether in any event there was competent evidence to support the court's findings." *In re Hogan*, 32 N.C. App. 429, 433, 232 S.E.2d 492, 494 (1977). If a respondent does not challenge a finding of fact, however, it is "presumed to be supported by competent evidence and [is] binding on appeal."

*State v. Baker*, 312 N.C. 34, 37, 320 S.E.2d 670, 673 (1984). Furthermore, we do not reweigh the evidence because "[i]t is for the trier of fact to determine whether evidence offered in a particular case is clear, cogent, and convincing." *In re Underwood*, 38 N.C. App. 344, 347, 247 S.E.2d 778, 781 (1978).

Respondent challenges Finding of Fact 9, which states: "Dr. Fahs stated he is concerned [respondent] would 'relapse by the end of football season' if released without placement." Respondent argues that this is not a finding of fact because it is simply a recitation of evidence. For this proposition respondent relies on *In re Rogers*, 297 N.C. 48, 55, 253 S.E.2d 912, 917 (1979), which states: "Indeed [the Board] made no findings of fact at all. It merely recited some of the evidence presented and stated its conclusion that Rogers had not satisfied the Board of his good moral character." While on its face this statement would seem to support respondent's argument, it does not.

There are two types of facts: Ultimate facts and evidentiary facts. *See Woodard v. Mordecai*, 234 N.C. 463, 470, 67 S.E.2d 639, 644 (1951). "Ultimate facts are the final facts required to establish the plaintiff's cause of action or the defendant's defense; and evidentiary facts are those subsidiary

facts required to prove the ultimate facts." *Id.* Thus, knowing that there are evidentiary facts and ultimate facts, it is clear that the issue in *Rogers* was that the Board only found evidentiary facts and not ultimate facts, which would support its conclusion of law. Applied here, the trial court did not err in making the evidentiary finding in Finding of Fact 9 even though it was reciting some of Dr. Fahs's testimony because the trial court went on to find the ultimate facts that respondent was mentally ill and a danger to himself and others.

Next, respondent asserts that there is not clear, cogent, and convincing evidence to support the trial court's ultimate findings that respondent is a danger to himself and a danger to others.[1]

A person is a danger to himself if within the relevant past:

> 1. The individual has acted in such a way as to show:

---

[1] We note that respondent states he is challenging the trial court's conclusions of law that respondent is a danger to himself and others. While the pre-printed Involuntary Commitment Order AOC-SP-203 categorizes these as "conclusions," the law is clear that these determinations are not conclusions of law because "[w]hether a person is mentally ill . . . and whether he is imminently dangerous to himself or others, present questions of fact." *Hogan*, 32 N.C. App. at 433, 232 S.E.2d at 494. Thus, "[w]e will ignore the incorrect designation and treat the court's conclusions as findings of the ultimate facts required by [the statute]." *See id.*

I. That he would be unable, without care, supervision, and the continued assistance of others not otherwise available, to exercise self-control, judgment, and discretion in the conduct of his daily responsibilities and social relations, or to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety; and

II. That there is a reasonable probability of his suffering serious physical debilitation within the near future unless adequate treatment is given pursuant to this Chapter. A showing of behavior that is grossly irrational, of actions that the individual is unable to control, of behavior that is grossly inappropriate to the situation, or of other evidence of severely impaired insight and judgment shall create a prima facie inference that the individual is unable to care for himself . . . .

N.C. Gen. Stat. § 122C-3(11)(a) (2013). Respondent concedes that the evidence supports subpart I of the definition, but argues that the evidence does not support the finding that there was a "reasonable probability" that respondent would suffer serious physical debilitation in the near future. Respondent relies on *In re Whatley*, __ N.C. App. __, __, 736 S.E.2d 527, 531 (2012), *appeal after remand*, __ N.C. App. __, 754 S.E2d 258 (2014) (unpublished), for the proposition that the possibility of relapse alone cannot satisfy the requirement of serious

physical debilitation in the near future. The *Whatley* court was concerned that the trial court's findings of fact were all focused on the respondent's past conduct and not about the respondent's potential future conduct. *Id.* ("Each of the trial court's findings pertain to either Respondent's history of mental illness or her behavior prior to and leading up to the commitment hearing, but they do not indicate that these circumstances render Respondent a danger to herself in the future."). The facts before us are distinguishable from *Whatley* because, while the trial court did make findings of fact about respondent's past conduct, the trial court also made findings about respondent's likely future conduct. The trial court found that respondent "is at a high risk of decompensation if released and without medication," and that Dr. Fahs thought respondent, if released, would "relapse by the end of football season." As a result, the trial court's findings of fact indicate that respondent is a danger to himself in the future. Therefore, the trial court properly found that respondent is a danger to himself because there is a reasonable possibility that he will suffer serious physical debilitation in the near future.

We do not need to consider respondent's argument that he is not a danger to others because N.C.G.S. § 122C-276(e) in

conjunction with N.C.G.S. § 122C-271(b)(2) only requires that the trial court find that a respondent is a danger to himself *or* others.

For the reasons stated above, we affirm.

Affirmed.

Judges STEELMAN and DILLON concur.