IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-131

No. 317A21

Filed 16 December 2022

IN THE MATTER OF R.S.H.

Appeal pursuant to N.C.G.S. § 7A-30(2) from an unpublished decision of a divided panel of the Court of Appeals, 278 N.C. App. 605, 2021-NCCOA-369, affirming an involuntary commitment order entered on 19 June 2020 by Judge Pat Evans in District Court, Durham County. On 29 October 2021, the Supreme Court allowed respondent's petition for discretionary review as to additional issues. On 21 July 2022, this Court allowed the motion of respondent in *In re J.R.*, 2022-NCSC-127, to consolidate these cases for oral argument. Heard in the Supreme Court on 20 September 2022.

*Glenn Gerding, Appellate Defender, by Candace Washington, Assistant Appellate Defender, for respondent-appellant.*

*Joshua H. Stein, Attorney General, by South A. Moore, General Counsel Fellow, and James W. Doggett, Deputy Solicitor General, for the State.*

*Disability Rights North Carolina, by Lisa Grafstein, Holly Stiles, and Elizabeth Myerholtz for Disability Rights North Carolina, National Association of Social Workers, Promise Resource Network, and Peer Voice North Carolina, amicus curiae.*

NEWBY, Chief Justice.

In this case we first consider whether the trial court violated respondent's due process rights by proceeding with respondent's involuntary commitment hearing

when petitioner was not represented by counsel. For the reasons stated in the majority opinion in *In re J.R.*, 2022-NCSC-127, we conclude the trial court did not violate respondent's due process rights.[1]

¶ 2 Next respondent asks us to consider whether she preserved her right to challenge the trial court's incorporation of a non-testifying physician's examination report into its findings of fact and whether, by doing so, the trial court violated respondent's confrontation rights. If we hold that respondent's challenge is preserved and that the trial court committed error by incorporating the report, we also consider whether the trial court's remaining findings of fact, absent those derived from the non-testifying physician's report, were sufficient to support the trial court's involuntary commitment order. Upon considering the testimony of respondent's treating physician and incorporating an examination report from a non-testifying physician, the trial court ordered that respondent be involuntarily committed for up to thirty days. Because respondent preserved her confrontation argument and was not afforded an opportunity to challenge the inclusion of the non-testifying

---

[1] On 15 November 2021, *In re J.R.*, 313A21, was designated as the lead case in six overlapping appeals. *See In re E.M.D.Y.*, 279A21; *In re C.G.*, 308A21; *In re Q.J.*, 309A21; *In re C.G.F.*, 312A21; *In re J.R.*, 313A21; *In re R.S.H.*, 317A21. The question presented to this Court in all six appeals was whether the trial court violated respondents' due process right to an impartial tribunal. The due process issue in each of these cases came to this Court by right of appeal based upon a dissent. On 21 July 2022, the cases were consolidated for oral argument on this issue and heard in the Supreme Court on 20 September 2022. Because we resolve the due process issue based upon our holding in the lead case, that issue is not further discussed herein.

physician's report, the trial court erred in incorporating the report into its findings of fact. The trial court's recorded factual findings, however, are based on competent evidence from the testifying physician and are sufficient to support the trial court's conclusion that respondent is dangerous to herself. As such, the error is not prejudicial, and the commitment order is affirmed.

¶ 3        On 21 May 2020, respondent was taken to Duke University Hospital "for evaluation of command auditory hallucinations to commit suicide." Carolyn Usanis, M.D. examined respondent and observed her "laughing and talking to herself . . . [and] crying uncontrollably." Dr. Usanis also reported that respondent informed her that "voices [were] saying mean things to her." Dr. Usanis completed a commitment report and petitioned for respondent's involuntary commitment. The next day, Sarah Kirk, M.D. examined respondent, completed a second commitment report, and also recommended that respondent be involuntarily committed.

¶ 4        On 19 June 2020, the trial court held an involuntary commitment hearing. Sandra Brown, M.D., respondent's treating psychiatrist at Duke University Hospital, testified at the hearing. Dr. Brown explained that respondent "has a long[-]standing history of schizoaffective disorder" and has "spent a lot of time in these psychotic states." Based on respondent's previous admissions to Duke, Dr. Brown noted that respondent generally "takes a long time to recover" and to "respond to medication." Dr. Brown testified that in her current psychotic state, respondent was "talking about

hearing voices telling her to kill herself," could be "seen running around the unit screaming," told doctors "that she does not think she needs any more treatment," and "ha[d] not really gotten better as quickly as we had hoped." Dr. Brown testified that this behavior "is a pretty typical presentation from [respondent]." As such, Dr. Brown recommended that respondent be committed for thirty days.

¶ 5    At the close of the hearing, the trial court concluded that respondent was mentally ill and dangerous to herself. The trial court made the following findings of fact:

> Respondent has told staff (Dr.) she does not need
> medication
> [Respondent] continues to hear voices and states she wants
> to kill herself
> [Respondent] has been diagnosed since age 18 with
> affective schizodisorder
> [Respondent] has history of non-compliance with meds
> [Respondent] is unable to have rational discussions w[ith]
> team about treatment/discharge
> [Respondent] runs on Unit screaming constantly
> [Respondent] shows no sign of improvement; meds are
> being changed (adjusted)/requires supervision

¶ 6    After the hearing concluded, the trial court incorporated the findings from Dr. Kirk's second examination report into the commitment order. Dr. Kirk did not testify, however, and her report was not offered or admitted into evidence during the hearing. Dr. Kirk's report included the following findings:

> [Respondent] presents with auditory hallucinations that
> are commanding her to kill herself. She has several plans
> for how she could kill herself including electrocution in a

> bath tub with a hair dryer and cutting her wrists with a knife and has access to these means at home. Her symptoms are consistent with acute psychosis[.] [S]he is currently too disorganized in her mental illness to care for herself and her command auditory hallucinations put her at serious, imminent risk of harm to self outside of the secure environment of the hospital.

¶ 7    The trial court ordered that respondent be involuntarily committed for up to thirty days. Respondent appealed.

¶ 8    On appeal, respondent argued, in relevant part, that (1) the trial court violated her right to confrontation by incorporating the report of a non-testifying commitment physician and (2) the remaining findings of fact were insufficient to support the conclusion that she is dangerous to herself.[2] The Court of Appeals affirmed the commitment order. The Court of Appeals recognized that respondent's "right to confront and cross-examine witnesses may not be denied" but held that respondent did not preserve her confrontation argument because she "failed to object appropriately at the hearing" to the incorporation of Dr. Kirk's report. *In re R.S.H.*, 278 N.C. App. 605, 2021-NCCOA-369, ¶ 9 (unpublished). Nevertheless, even if respondent's confrontation argument had been preserved and it were error, the Court of Appeals concluded that the unchallenged findings, based on the testimony of the witness at the hearing, were sufficient to support the commitment order. *Id.* ¶ 10.

---

[2] As previously discussed, the due process issue arising from an appeal of right is resolved based on our decision in *In re J.R.*, 2022-NCSC-127. Thus, for purposes of this opinion, we discuss only the additional issues.

¶ 9 Respondent petitioned this Court to consider (1) whether respondent failed to preserve her argument that incorporating the report of a non-testifying physician violated her confrontation right and (2) whether the trial court's remaining findings were sufficient to support its commitment order. This Court granted respondent's petition.

¶ 10 We first determine whether respondent failed to preserve her confrontation argument by not objecting to incorporation of Dr. Kirk's report into the trial court's commitment order. "[T]o preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make . . . ." N.C. R. App. P. 10(a)(1). A party does not fail to preserve an issue for appellate review, however, where the trial court acts on its own motion without prior notice and thereby denies the party the opportunity to object. *Cf. State v. Lachat*, 317 N.C. 73, 86, 343 S.E.2d 872, 879 (1986) (concluding that the defendant was not required to go through the formality of objecting when declarations of mistrials were entered on the trial court's own motion and without prior notice or warning to the defendant).

¶ 11 Here respondent did not fail to preserve her confrontation argument. The trial court acted on its own motion without informing the parties of its intention to incorporate Dr. Kirk's report into the commitment order. After the close of the hearing, the trial court incorporated Dr. Kirk's report by merely checking a box on

the Involuntary Commitment Order form. Accordingly, respondent did not have an opportunity to preserve the issue for appellate review.

¶ 12        Relatedly, we next consider whether the trial court violated respondent's confrontation right by incorporating Dr. Kirk's report into its findings of fact. This Court reviews decisions of the Court of Appeals for legal error. *State v. Brooks*, 337 N.C. 132, 149, 446 S.E.2d 579, 590 (1994). Questions of law are reviewed de novo. *See State v. Thomsen*, 369 N.C. 22, 24, 789 S.E.2d 639, 641 (2016).

¶ 13        Subsection 122C-268(f) provides that "[c]ertified copies of reports and findings of commitment examiners and previous and current medical records are admissible in evidence, but the *respondent's right to confront and cross-examine witnesses may not be denied.*" N.C.G.S. § 122C-268(f) (2021) (emphasis added). As such, a respondent must "be apprised of all the evidence received by the court and given an opportunity to test, explain, or rebut it." *In re Gupton*, 238 N.C. 303, 304, 77 S.E.2d 716, 717–18 (1953); *see In re Wilson*, 257 N.C. 593, 596–97, 126 S.E.2d 489, 492 (1962) (reversing a commitment order when the respondent was denied notice of a hearing on and the opportunity to challenge findings from her medical records that were used as the basis for her commitment).

¶ 14        Here the trial court incorporated Dr. Kirk's report after the hearing concluded. Dr. Kirk did not testify at the hearing; the report was not formally offered or admitted into evidence; and the trial court did not inform respondent that it was incorporating

the report into its findings of fact. Accordingly, respondent could not cross-examine Dr. Kirk, challenge the findings in the report, or otherwise assert her confrontation right. The trial court thus violated respondent's confrontation right by incorporating Dr. Kirk's report into its findings of fact.

¶ 15　　　　Incorporation of Dr. Kirk's report was not prejudicial, however, because the trial court's written findings of fact are supported by Dr. Brown's testimony and are sufficient to support the trial court's conclusion that respondent is a danger to herself. An error is not prejudicial unless a respondent demonstrates "that a different result would have likely ensued had the error not occurred." *Responsible Citizens v. City of Asheville*, 308 N.C. 255, 271, 302 S.E.2d 204, 214 (1983). For involuntary commitment orders, the erroneous incorporation of an examination report is not prejudicial if the trial court's remaining factual findings, based on competent evidence, support its ultimate finding that the statutory criteria for commitment have been met. *See generally In re Moore*, 234 N.C. App. 37, 42–45, 758 S.E.2d 33, 37–38 (citing *In re Hogan*, 32 N.C. App. 429, 433, 232 S.E.2d 492, 494 (1977)), *disc. rev. denied*, 367 N.C. 527, 762 S.E.2d 202 (2014).

¶ 16　　　　"To support an inpatient commitment order, the court shall find by clear, cogent, and convincing evidence that the respondent is mentally ill and dangerous to self . . . ." N.C.G.S. § 122C-268(j) (2021). An individual is a danger to herself if she has acted in a way that shows all of the following:

> I.      The individual would be unable, without care, supervision, and the continued assistance of others not otherwise available, to exercise self-control, judgment, and discretion in the conduct of the individual's daily responsibilities and social relations, or to satisfy the individual's need for nourishment, personal or medical care, shelter, or self-protection and safety.
>
> II.      There is a reasonable probability of the individual's suffering serious physical debilitation within the near future unless adequate treatment is given pursuant to this Chapter. A showing of behavior that is grossly irrational[ or] of actions that the individual is unable to control . . . shall create a prima facie inference that the individual is unable to care for himself or herself.

N.C.G.S. § 122C-3(11)(a)(1) (2021).

Thus, the trial court must make findings that address both respondent's current inability to care for herself and the probability that respondent would suffer serious physical debilitation in the future without treatment. To satisfy the second prong, the trial court's findings must simply "*indicate* that respondent is a danger to [her]self in the future." *See In re Moore*, 234 N.C. App. at 44–45, 758 S.E.2d at 38 (emphasis added). While the trial court "must draw a nexus between past conduct and future danger" it "need not say the magic words 'reasonable probability of future harm.' " *In re J.P.S.*, 264 N.C. App. 58, 63, 823 S.E.2d 917, 921 (2019) (citing *In re Whatley*, 224 N.C. App. 267, 273, 736 S.E.2d 527, 531 (2012)).

¶ 18        Respondent contends that the trial court's factual findings, absent Dr. Kirk's report, were insufficient to support its conclusion that respondent is a danger to herself. According to respondent, the trial court failed to make forward-looking findings demonstrating a reasonable probability that respondent would suffer serious physical debilitation in the near future under N.C.G.S. § 122C-3(11)(a)(1)(II).[3]

¶ 19        Appellate review of a commitment order "is limited to determining '(1) whether the court's ultimate findings are indeed supported by the "facts" which the court recorded in its order as supporting its findings, and (2) whether in any event there was competent evidence to support the court's findings.' " *In re Moore*, 234 N.C. App. at 42–43, 758 S.E.2d at 37 (quoting *In re Hogan*, 32 N.C. App. at 433, 232 S.E.2d at 494).

¶ 20        The trial court's findings of fact, based on Dr. Brown's testimony, indicate that respondent is a danger to herself in the near future. The trial court found that respondent was suicidal, "continues to hear voices," "shows no signs of improvement," and "requires supervision." Such findings are supported by competent evidence. Dr. Brown testified that respondent was "talking about hearing voices telling her to kill herself" and was "feeling like she can't take it anymore and . . . wants to die."

---

[3] Respondent does not challenge the trial court's finding that she is unable to care for herself under sub-subdivision I. Accordingly, that finding is binding on appeal. *See In re Moore*, 234 N.C. App. at 43, 758 S.E.2d at 37 (citing *State v. Baker*, 312 N.C. 34, 37, 320 S.E.2d 670, 673 (1984)).

Moreover, according to Dr. Brown, respondent had "not really gotten better" yet and thus needed further supervision and adjustments to her medication. Dr. Brown explained that respondent generally "takes a long time to recover" and adjust to changes in medication "probably because she has spent a lot of time in these psychotic states." The trial court's findings, supported by Dr. Brown's testimony, reflect the future risk that, without further inpatient treatment and supervision, respondent's symptoms and suicidal thoughts would persist, and she would likely harm herself.

¶ 21    The trial court also found that respondent "told staff . . . she does not need medication" and was "unable to have rational discussions w[ith her] team about treatment/discharge." These findings are supported by Dr. Brown's testimony that respondent "does not think that she needs any more treatment," but that to improve, respondent needs further inpatient treatment and medication adjustments that require close monitoring. The trial court's findings indicate a reasonable probability of respondent suffering future harm to herself without continued care. Respondent did not believe she needed medication and could not communicate with her doctors about a treatment plan; yet, respondent's symptoms and suicidal thoughts necessitated further inpatient care and supervision. *See In re Zollicoffer*, 165 N.C. App. 462, 469, 598 S.E.2d 696, 700 (2004) (affirming the trial court's finding that the respondent was a danger to himself because he was not taking his medication or

cooperating with his medical team despite needing ongoing treatment and supervision).

¶ 22    Although the trial court erred by incorporating Dr. Kirk's report, the trial court's written findings, supported by Dr. Brown's testimony in turn, support the trial court's conclusion that respondent is dangerous to herself. As such, respondent cannot show "that a different result would have likely ensued had the error not occurred." *Responsible Citizens*, 308 N.C. at 271, 302 S.E.2d at 214. The Court of Appeals thus correctly concluded that incorporation of the report was not prejudicial because the "findings support the conclusions and order." *In re R.S.H.*, 2021-NCCOA-369, ¶ 10.

¶ 23    In summary, regarding the due process issue, we affirm the Court of Appeals based on our decision in *In re J.R.*, 2022-NCSC-127. The Court of Appeals, however, erred in deciding that respondent failed to preserve the objection to the trial court's incorporation of the non-testifying physician's examination report. While incorporation of the report was error, nonetheless, the Court of Appeals correctly held that the trial court made sufficient findings of fact based on the evidence presented by the testifying witness to support its involuntary commitment decision. Therefore, the decision of the Court of Appeals is modified and affirmed.

MODIFIED AND AFFIRMED.

Justices HUDSON, MORGAN, and EARLS dissent from the holding on the due process issue in this case for the reasons stated in Justice Earls' dissenting opinion in *In re J.R.*, 2022-NCSC-127.

Justice EARLS concurring in part and dissenting in part.

I dissent from the majority's holding on the due process issue in this case for the reasons stated in my dissenting opinion in *In re J.R.*, 2022-NCSC-127.

Justices HUDSON and MORGAN join in this opinion concurring in part and dissenting in part.