An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-1168

Filed 17 June 2026

Granville County, No. 25SPC000385-380

IN THE MATTER OF: B.E.G., Jr.

Appeal by respondent from order entered 22 April 2025 by Judge J. Hoyte Stultz III in Granville County District Court. Heard in the Court of Appeals 3 June 2026.

*Attorney General, Jeff Jackson, by Assistant Attorney General Amanda M. Whitt-Downs, for the State.*

*Appellate Defender Glenn Gerding, and Assistant Appellate Defender Candace Washington, for the defendant-appellant.*

TYSON, Judge.

B.E.G., Jr. ("Brad") appeals from the trial court's involuntary commitment order. (Pseudonym used to protect Respondent's identity pursuant to N.C. R. App. P. 42). We affirm.

## I. Background

Brad, age 22, was brought by his parents on 7 April 2025 to the emergency department at the University of North Carolina at Chapel Hill hospital ("UNC"). Brad was examined by Paul Morrea, LCSW, who opined Brad suffered from a mental

illness and was a danger to himself and others. Mr. Morrea noted Brad, who had no known history of mental illness, appeared to be in a manic state with "pressured speech," a psychological and neuropsychological symptom characterized by rapid, frenzied, and uninterrupted speech. Brad also demonstrated tangential speech, flight of ideas, and delusions. He had not slept more than ten to fifteen hours in the past week, had been driving erratically, and had lost his job. Mr. Morrea further noted Brad was "unable to meet any of his needs."

Mr. Morrea submitted an Affidavit and Petition for Involuntary Commitment. A magistrate entered an involuntary commitment order and Brad was taken into law enforcement custody and transported to a 24-hour psychiatric facility at University of North Carolina Youth Behavioral Health Hospital ("YBH"). On 9 April 2025, Brad was evaluated by Dr. Michael N. Zarzar, a psychiatrist, who opined he was mentally ill and a danger to himself and others, and who recommended a fourteen-day involuntary commitment. Dr. Zarzar's impression was Brad suffered from bipolar disorder.

A hearing was held on Brad's involuntary commitment on 17 April 2025. Dr. Amanda Price, Brad's treating physician at YBH, testified Brad was diagnosed as having bipolar disorder with an episode of mania.

By order filed 22 April 2025, the Granville County District Court entered an order for Brad's involuntary commitment for a period not to exceed fourteen days. The order incorporates Dr. Price's observations asserting: Brad is unlikely to take his

medications and stated he would not take them; Brad has limited insight into his condition; hospital security personnel were needed due to Brad's behaviors; and, Brad demonstrates erratic, impulsive and dangerous behaviors. Dr. Price opined Brad's behaviors were the result of the onset of mania, and he posed a risk of injury to himself and others. Brad was discharged from YBH on 7 May 2025.

## II.    Jurisdiction

This Court possesses jurisdiction over this appeal pursuant to N.C. Gen. Stat. § 122C-272 (2025).

## III.    Issue

Brad argues the trial court erred by involuntarily committing him because the court's ultimate finding and conclusion he posed a danger to himself or others was not supported by sufficient findings of fact.

## IV.    Standard of Review

"Whether a person is mentally ill . . . and whether he is imminently dangerous to himself or others, presents questions of fact." *In re Hogan*, 32 N.C. App. 429, 433, 232 S.E.2d 492, 494 (1977). The trial court's determinations of mental illness and danger are commonly referred to as "ultimate facts." *Id.* The facts recorded by the trial court in support of the ultimate facts are commonly referred to as "evidentiary facts." *See In re Moore*, 234 N.C. App. 37, 43, 758 S.E.2d 33, 37 (2014).

This Court reviews an involuntary commitment order to determine "whether . . . any competent evidence . . . support[s] the '[evidentiary] facts' recorded in the

commitment order and whether the trial court's ultimate findings of mental illness and dangerous to self or others were supported by the 'facts' recorded in the order." *In re Whatley*, 224 N.C. App. 267, 270, 736 S.E.2d 527, 530 (2012) (citation omitted).

## V.    Danger to Self or Others

## A. Statutory Requirements

"To support an inpatient commitment order, the [trial] court shall find by clear, cogent, and convincing evidence . . . respondent is mentally ill and dangerous to self, as defined in G.S. 122C-3(11)a., or dangerous to others, as defined in G.S. 122C-3(11)b.  The court shall record the facts that support its findings."  N.C. Gen. Stat. § 122C-268(j) (2025).

An individual is considered dangerous to self if:

> Within the relevant past . . . [t]he individual has acted in such a way as to show all of the following:
>
> I.    The individual would be unable, without care, supervision, and the continued assistance of others not otherwise available, to exercise self-control, judgment, and discretion in the conduct of the individual's daily responsibilities and social relations, or to satisfy the individual's need for nourishment, person or medical care, shelter, or self-protection and safety.
>
> II.    There is a reasonable probability of the individual's suffering serious physical debilitation within the near future unless adequate treatment is given pursuant to this Chapter.  A showing of behavior that is grossly irrational, of actions that the individual is unable to control, of behavior that is grossly inappropriate to the situation, or of other

evidence of severely impaired insight and judgment shall create a prima facie inference that the individual is unable to care for himself or herself.

N.C. Gen. Stat. § 122C-3(11)(a) (2025).

The first prong, numeral I of the statute, looks to past "behavior prior to and leading up to the commitment hearing." *In re Whatley*, 224 N.C. App. at 273, 736 S.E.2d at 531. The second prong is future-looking and is satisfied if there is a reasonable probability the individual's symptoms will "persist and endanger [him] within the near future." *Id.*

An individual is considered dangerous to others if:

Within the relevant past, the individual has inflicted or attempted to inflict or threatened to inflict serious bodily harm on another, or has acted in such a way as to create a substantial risk of serious bodily harm to another, or has engaged in extreme destruction of property; and that there is a reasonable probability that this conduct will be repeated. Previous episodes of dangerousness to others, when applicable, may be considered when determining reasonable probability of future dangerous conduct.

N.C. Gen. Stat. § 122C-3(11)(b) (2025).

## B. Findings of Fact

The trial court heard testimony from Dr. Price, Brad's treating psychiatrist during his inpatient hospitalization, and from Brad at the involuntary commitment hearing. Dr. Price testified Brad has a diagnosis of bipolar disorder with a recent episode of mania, and his condition will require continued care in the outpatient setting and medications, likely for the remainder of his life. Dr. Price testified

regarding her review of the medical records from Brad's initial emergency room visit. At that time, he was speaking very quickly, experienced rapid thoughts, which were not logical or linear, and exhibited symptoms of grandiosity. Brad's parents reported to hospital personnel Brad had been kicked out of a bank, several hotels, and two bars within a two-week period. Brad stated he was feeling "on top of the world" and was also threatening violence. Brad's family has a significant history of bipolar disorder. Dr. Price also noted Brad's age is when bipolar disorder develops, and Brad's sudden change of behavior is an indicator.

Dr. Price further testified Brad was agitated, slamming doors, and having difficulty following directions while in the emergency room. Brad did not wear his gown outside of his room on one occasion, and he punched the wall hard enough to injure himself and leave an abrasion. Upon his transfer to YBH, Brad continued yelling and threatened "to raise hell." Brad took medication only after hospital personnel had told him they were required to administer it to him by force if he did not take it.

During his stay at YBH prior to the commitment hearing, Brad continued cursing and yelling. Dr. Price testified security personnel were called to the unit multiple times due to his behaviors. Dr. Price had difficulty discussing her observations and diagnosis with Brad because of his agitation. He was administered non-emergent force medication. Dr. Price testified if the threat of force was not present, she was concerned Brad would not take his medication. By the time of the

commitment hearing, Brad's agitation had improved and Dr. Price was able to converse with him. However, Brad did not believe he had bipolar disorder or needed medication.

To satisfy the past-looking prong of danger to self, the trial court found the following, based upon Dr. Price's testimony: (1) there were concerns from Brad's parents about "unusual behavior," including "lack of sleep, rapid speaking and flight of thinking," "erratic" behavior, and the fact that Brad "had been asked to leave several places due to erratic and disturbing behavior," (2) Brad "was given emergent force medication in the ER due to the acute danger posed by his behavior," (3) "[w]hile in the ER he became agitated and injured himself (abrasion) when he struck the wall with his hand," (4) there was a "sudden change in behavior that resulted in impulsive and dangerous behavior," and (5) "[d]uring testimony, the [c]ourt observed his significant agitation and frustration."

The testimonies of Brad and Dr. Price, and the observations of the trial court, are competent evidence tending to show Brad is unable "to exercise self-control, judgment, and discretion" without inpatient care and supervision. N.C. Gen. Stat. § 122C-3(11)(a)(1)(I) (2025). "Because these findings are supported by creditable relevant evidence, the trial court concluded State-Petitioner had met its burden of proof under the statute." *In re E.B.*, 287 N.C. App. 103, 109, 882 S.E.2d 379, 384 (2022). We agree.

The forward-looking prong of danger to self may be satisfied as long as the trial

court "made findings about respondent's likely future conduct." *In re Moore*, 234 N.C. App. at 44, 758 S.E.2d at 38. Dr. Price testified without insight into his diagnosis, Brad would not ask for help, and he would ultimately be at high risk of injury to himself or others because his symptoms were not fully controlled.

On the morning of the commitment hearing, Dr. Price discussed future options with Brad, including starting on mood stabilizer medication, which would limit his need to return to the hospital. Brad reasserted that he does not believe he has bipolar disorder. Dr. Price further stated as recently as the day before, Brad adamantly told her he would not take medications after he left the hospital. These conversations led Dr. Price to conclude if he were to leave the hospital, Brad would discontinue his medications without any kind of outpatient follow-up.

Dr. Price was asked to opine what would happen if Brad left the hospital, refused to take his medications, and received no outpatient care. She responded he would suffer further mental health deterioration and potential physical injury. Brad would experience increased impulsivity, which would place him and others at risk. Dr. Price opined Brad should remain in inpatient care for his safety.

Based upon the evidence presented by the State, the trial court found Brad "is unlikely to take medications upon discharge" and "[t]he symptoms present prior to admission will return and he will pose a danger to himself or others." The State presented competent evidence upon which the trial court relied when it ultimately found and concluded Brad was a danger to himself.

Turning to danger to others, Dr. Price testified Brad had said he would "raise hell," "berat[ed] the staff," and exhibited "threatening behaviors." There were times when Brad was "cursing, . . . yelling, times that security had to come up onto the unit." Dr. Price testified unless Brad had more understanding about his symptoms and medication compliance, "he would ultimately be at high risk of injury to himself or to others because of his symptoms that are not fully controlled at this time."

The trial court found Brad "was behaving erratic and had been asked to leave several places due to erratic and disturbing behavior." Also, "[w]hile in the ER he became agitated and injured himself (abrasion) when he struck the wall with his hand." The commitment order noted Brad's symptoms "are indicative of mania" and he is "unlikely to take medications upon discharge." The trial court properly relied on competent evidence when it ultimately found in its commitment order Brad "pose[s] a danger to . . . others" and "a significant risk [of] injury to . . . others."

## VI.   Conclusion

Sufficient evidence was presented to support the evidentiary facts recorded in the commitment order. Testimony was given by Brad's treating physician, who recommended two weeks of further inpatient treatment. The trial court's ultimate findings of Brad's danger to himself and others were supported by the evidence and findings of fact. We affirm the trial court's involuntary commitment order. *It is so ordered.*

AFFIRMED.

Judges WOOD and FLOOD concur.

Report per Rule 30(e).