ZACHARY, Judge.
 

 *919
 

 *58
 
 J.P.S.
 
 [1]
 
 ("Respondent") appeals from an Involuntary Commitment Order entered against him. Respondent argues that the trial court made
 
 *59
 
 insufficient findings of fact to support its conclusion that Respondent was dangerous to himself and others. We agree. As a result, the order is vacated and remanded to the trial court for additional findings of fact.
 

 I. Background
 

 After examining Respondent on 6 September 2017, Dr. Kelly Hobgood of Carolinas Medical Center-Randolph ("CMC-Randolph") in Charlotte executed an Affidavit and Petition for Involuntary Commitment alleging that Respondent was "a substance abuser" who was "mentally ill and dangerous to self or others." The magistrate ordered that Respondent be taken into custody on 7 September 2017. Later that day, Dr. W. Carlton Gay of the Behavioral Health Center at CMC-Randolph examined Respondent and completed an "Examination and Recommendation to Determine Necessity for Involuntary Commitment" form. On the form, Dr. Gay marked boxes indicating that Respondent was "mentally ill," "dangerous to self," "dangerous to others," and "a substance abuser." To support his conclusions, Dr. Gay included in the "Description of Findings" that Respondent
 

 [m]aintains that he has 5 military staff members stationed around the area giving his [sic] intelligence information to help in his lawsuit against York County Court system/jail. Has made threatening statements toward the judicial staff there in general for the way that he was treated (threat made while here). Feels the Constitution provides him justification. Prior to coming to ED, he took a large # of Valium and Ativan in a suicide attempt.
 

 A commitment hearing was held on 15 September 2017 before the Honorable Tyyawdi M. Hands. After hearing testimony, Judge Hands stated that "[b]ased on the evidence, the Court concludes that Respondent is mentally ill and is ... dangerous to either himself and/or others. For those reasons, I enter the order that he be committed for up to 30 additional days here and for a 90-day outpatient order." In the trial court's written Involuntary Commitment Order, the trial court marked boxes indicating that Respondent was mentally ill and dangerous to himself or others. To support those conclusions, the trial court marked another box that stated: "Based on the evidence presented, the Court ... by clear, cogent, and convincing evidence, finds as facts all matters set out in [Dr. Gay's 7 September 2017 report], and the report is incorporated by reference as findings." In addition, the trial court found the following additional facts in support of involuntary commitment:
 

 *60
 
 Resp[ondent] followed by [outpatient psychiatrist] where he has high dose of Adderall [and] Valium meds. Brought by mom-agitated [and] required multiple forced meds [and] restraints. Sent texts that he was going to start a war [and] had 400 rounds. Has grandiose thoughts. He says he is a commander [and] if judge makes wrong decision in his court case he will extract the judge [and] have his own hearing [and] same [at] Rock Hill PD. Refuses to consider reasonable meds for mania [and] psychosis. Remains on forced meds [and] is calmer today because [of] multiple doses. Resp[ondent] admits he has PTSD from Iraq and retired early. Resp[ondent] is unhappy about the side effects of the medication including feeling very groggy. Resp[ondent] denies mak[ing] the comments about the rounds.
 

 The trial court ordered a thirty-day inpatient commitment for Respondent, followed by a ninety-day period of outpatient commitment. Respondent timely appealed.
 

 II. Discussion
 

 Respondent argues on appeal that the trial court erred in concluding that he was a danger
 
 *920
 
 to himself or others, without making sufficient findings of fact to support that conclusion. For the reasons explained below, we agree.
 

 Although Respondent's Commitment Order has already expired, we note that the argument before us is not moot because "the challenged judgment may cause collateral legal consequences for the appellant."
 
 In re Booker
 
 ,
 
 193 N.C. App. 433
 
 , 436,
 
 667 S.E.2d 302
 
 , 304 (2008). Such collateral legal consequences might include use of the judgment to attack the capacity of a trial witness, for impeachment purposes, to attack the character of a defendant if he has put character in issue, or to form the basis for a future commitment.
 
 In re Hatley
 
 ,
 
 291 N.C. 693
 
 , 695,
 
 231 S.E.2d 633
 
 , 635 (1977).
 

 When deciding whether to involuntarily commit an individual for inpatient treatment, the trial court must make two specific findings "by clear, cogent, and convincing evidence." N.C. Gen. Stat. § 122C-268(j) (2017). First, the trial court must find "that the respondent is mentally ill."
 

 Id.
 

 Second, the trial court must find that the respondent is "dangerous to self, ... or dangerous to others."
 

 Id.
 

 In its order, the trial court "shall record the facts that support its findings."
 

 Id.
 

 *61
 
 Upon review of a commitment order, this Court must "determine whether there was
 
 any
 
 competent evidence to support the 'facts' recorded in the commitment order and whether the trial court's ultimate findings of mental illness and dangerous to self or others were supported by the 'facts' recorded in the order."
 
 In re Collins
 
 ,
 
 49 N.C. App. 243
 
 , 246,
 
 271 S.E.2d 72
 
 , 74 (1980). However, "[i]t is for the trier of fact to determine whether the competent evidence offered in a particular case met the burden of proof[,]" that is, "whether the evidence of respondent's mental illness and dangerousness was clear, cogent and convincing."
 

 Id.
 

 In the case before us, Respondent specifically challenges the trial court's conclusions that Respondent was dangerous to himself and dangerous to others. We address each in turn.
 

 A.
 
 Dangerous to Self
 

 The General Assembly has defined what it means for an individual to be "dangerous to himself":
 

 a. "Dangerous to himself" means that within the relevant past:
 

 1. The individual has acted in such a way as to show:
 

 I. That he would be unable, without care, supervision, and the continued assistance of others not otherwise available, to exercise self-control, judgment, and discretion in the conduct of his daily responsibilities and social relations, or to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety; and
 

 II. That there is a reasonable probability of his suffering serious physical debilitation within the near future unless adequate treatment is given pursuant to this Chapter. A showing of behavior that is grossly irrational, of actions that the individual is unable to control, of behavior that is grossly inappropriate to the situation, or of other evidence of severely impaired insight and judgment shall create a prima facie inference that the individual is unable to care for himself; or
 

 2. The individual has attempted suicide or threatened suicide and that there is a reasonable probability of
 
 *62
 
 suicide unless adequate treatment is given pursuant to this Chapter; or
 

 3. The individual has mutilated himself or attempted to mutilate himself and that there is a reasonable probability of serious self-mutilation unless adequate treatment is given pursuant to this Chapter.
 

 Previous episodes of dangerousness to self, when applicable, may be considered when determining reasonable probability of physical debilitation, suicide, or self-mutilation.
 

 N.C. Gen. Stat. § 122C-3(11)(a). The trial court must find sufficient evidence to support one of the three prongs of this statute in
 
 *921
 
 order to conclude that an individual is a danger to himself.
 

 Id.
 

 A trial court's involuntary commitment of a person cannot be based solely on findings of the individual's "history of mental illness or ... behavior prior to and leading up to the commitment hearing," but must include findings of "a reasonable probability" of some future harm absent treatment as required by N.C. Gen. Stat. § 122C-3(11)(a).
 
 In re Whatley
 
 ,
 
 224 N.C. App. 267
 
 , 273,
 
 736 S.E.2d 527
 
 , 531 (2012). Any commitment order that fails to include such findings is "insufficient to support its conclusions that [the] [r]espondent presented a danger to [himself] and others."
 
 Id.
 
 at 274,
 
 736 S.E.2d at 532
 
 .
 

 In
 
 Whatley
 
 , the trial court determined that the respondent was a danger to herself.
 
 Id.
 
 at 270,
 
 736 S.E.2d at 529
 
 . To support that conclusion, the trial court incorporated the findings from a physician's report and also made its own findings regarding the respondent's mental illness at the time and the events leading up to her commitment hearing.
 
 See
 

 id.
 
 at 271-72,
 
 736 S.E.2d at 530
 
 . On appeal, however, this Court determined that "the second prong of the 'dangerous to self' inquiry [was] not satisfied [because] none of the [trial] court's findings demonstrate[d] that there was a reasonable probability of [the] [r]espondent suffering serious physical debilitation within the near future absent her commitment."
 
 Id.
 
 at 272-73,
 
 736 S.E.2d at 531
 
 (quotation marks and brackets omitted). While the findings "reflect[ed] [the] [r]espondent's mental illness, ... they d[id] not indicate that [the] [r]espondent's illness or any of her aforementioned symptoms [would] persist and endanger her within the near future."
 
 Id.
 
 at 273,
 
 736 S.E.2d at 531
 
 . As a result, this Court could not "uphold the trial court's commitment order on the basis that [the] [r]espondent was dangerous to herself."
 

 Id.
 

 *63
 
 Here, the following evidence was presented at the commitment hearing to support that Respondent was dangerous to himself: (1) Respondent maintained grandiose thoughts that he had a military staff providing him with intelligence information; (2) Respondent ingested a large number of pills in an apparent suicide attempt; (3) Respondent had "a high dose of Adderall [and] Valium meds"; (4) Respondent presented with an agitated manner and required forced medication and restraints; (5) Respondent refused medication for mania and psychosis ; and (6) Respondent suffered from post-traumatic stress disorder as a result of prior military service. However, the trial court failed to make any finding that there was "a reasonable probability of [Respondent] suffering serious physical debilitation within the near future unless adequate treatment is given" or that there was "a reasonable probability of suicide unless adequate treatment is given." N.C. Gen. Stat. § 122C-3(11)(a)(1), (2). As in
 
 Whatley
 
 , the trial court's findings in this case "reflect Respondent's mental illness, but they do not indicate that Respondent's illness or any of [his] aforementioned symptoms will persist and endanger [him] within the near future."
 
 Whatley
 
 ,
 
 224 N.C. App. at 273
 
 ,
 
 736 S.E.2d at 531
 
 . Although the trial court need not say the magic words "reasonable probability of future harm," it must draw a nexus between past conduct and future danger.
 

 Id.
 

 Accordingly, because of the trial court's failure to include a finding of a reasonable probability of some future harm, "we cannot uphold the trial court's commitment order on the basis that Respondent posed a danger to [himself]."
 

 Id.
 

 B.
 
 Dangerous to Others
 

 An individual is "dangerous to others" when evidence is presented
 

 that within the relevant past, the individual has inflicted or attempted to inflict or threatened to inflict serious bodily harm on another, or has acted in such a way as to create a substantial risk of serious bodily harm to another, or has engaged in extreme destruction of property; and that there is a reasonable probability that this conduct will be repeated. Previous episodes of dangerousness to others, when applicable, may be considered when determining reasonable probability of future dangerous conduct.
 

 N.C. Gen. Stat. § 122C-3(11)(b). As a result, in order to conclude that the respondent is
 
 *922
 
 dangerous to others, the trial court must find three elements:
 

 (1) Within the [relevant] past
 
 *64
 
 (2) Respondent has
 

 (a) inflicted serious bodily harm on another,
 
 or
 

 (b) attempted to inflict serious bodily harm on another,
 
 or
 

 (c) threatened to inflict serious bodily harm on another,
 
 or
 

 (d) has acted in such a manner as to create a substantial risk of serious bodily harm to another, [or (e) has engaged in extreme destruction of property,] and
 

 (3) There is a reasonable probability that such conduct will occur again.
 

 In re Monroe
 
 ,
 
 49 N.C. App. 23
 
 , 30-31,
 
 270 S.E.2d 537
 
 , 541 (1980).
 
 [2]
 
 No finding of an overt act is required to support a conclusion that an individual is dangerous to others.
 
 Id.
 
 at 31,
 
 270 S.E.2d at 541
 
 .
 

 In the instant case, the only findings of fact relevant to the conclusion that Respondent was dangerous to others were (1) Respondent's statement that he was a "commander [and] if [a York County, South Carolina] judge makes [the] wrong decision in his court case [then] he will extract the judge [and] have his own hearing [and] same [at] Rock Hill PD"; and (2) Respondent's texts that he "had 400 rounds" and "was going to start a war." However, there was no explicit finding that there was a reasonable probability of future harm to others.
 
 Whatley
 
 ,
 
 224 N.C. App. at 274
 
 ,
 
 736 S.E.2d at 531
 
 (holding that the trial court's conclusion that the respondent was a danger to others was unsupported because the trial court's findings described past conduct and drew no connection to future danger to others). Again, although the trial court need not say the magic words "reasonable probability of future harm," it must draw a nexus between past conduct and future danger.
 
 Id.
 
 at 273,
 
 736 S.E.2d at 531
 
 .
 

 The trial court's findings fail to support its conclusion that Respondent was a danger to others absent commitment, and accordingly the Commitment Order cannot be upheld.
 

 *65
 

 III. Conclusion
 

 The trial court's findings were insufficient to justify the involuntary commitment of Respondent. The trial court's order lacked any finding that a reasonable probability of some future harm existed, either to Respondent or to others, absent his commitment. Thus, the Involuntary Commitment Order is vacated, and this matter is remanded to the trial court for it to make additional findings to support its conclusions.
 

 VACATED AND REMANDED.
 

 Judges TYSON and COLLINS concur.
 

 [1]
 

 Given the sensitive nature of this appeal, initials are used to protect Respondent's identity.
 

 [2]
 

 Monroe
 
 was decided under a definition of "dangerous to others" provided in
 
 N.C. Gen. Stat. § 122-58.2
 
 (1)(b) that did not include engaging in extreme destruction of property. That statute was repealed and recodified into the current definition in Chapter 122C that includes engaging in extreme destruction of property.
 
 See
 
 1979 N.C. Sess. Laws. 1260, 1261, ch. 915, § 1; 1985 N.C. Sess. Laws. 670, 672, ch. 589, §§ 1, 2.