IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-639

Filed 18 April 2023

Wake County, No. 22 SPC 895

IN THE MATTER OF: D.H.

Appeal by respondent from order entered 11 April 2022 by Judge Mark Stevens in Wake County District Court. Heard in the Court of Appeals 7 February 2023.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Robert T. Broughton, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender David W. Andrews, for respondent-appellant.*

ZACHARY, Judge.

D.H.[1] ("Respondent") appeals from an Involuntary Commitment Order entered against him. Respondent argues that the trial court's ultimate finding that he posed a danger to himself was not supported by its underlying findings regarding whether, absent inpatient mental health treatment, there was a reasonable probability that Respondent would suffer serious physical debilitation in the near future; in turn, Respondent contends, these findings were not supported by the evidence. After careful review, we affirm.

***Background***

---

[1] Given the sensitive nature of this appeal, we use initials to protect Respondent's identity.

On 28 March 2022, Respondent's father executed an Affidavit and Petition for Involuntary Commitment alleging, *inter alia*, that Respondent was "hearing voices[,]" hallucinating, "riding around the city of Raleigh displaying odd [b]ehaviors[,]" and refusing to participate in therapy or take his medication. The magistrate ordered that Respondent be taken into custody later that day.

The next day, Dr. Nancy Clayton of UNC Health Care Crisis and Assessment Services at WakeBrook, an inpatient 24-hour facility, examined Respondent and completed a "24 Hour Facility Exam for Involuntary Commitment" form. On the form, Dr. Clayton marked boxes indicating that Respondent was "[a]n individual with a mental illness[,]" "[d]angerous to" himself, and "[d]angerous to" others. To support her conclusions, Dr. Clayton included in the "Description of Findings" that Respondent

> was telling parents about being Emperor of Japan. [Respondent is] distractible and slow to respond. [Respondent] appears to respond to internal stimuli and is thought blocking in interview. He reports being off meds [for] several months and denies need for meds or having a mental illness despite this being his 3rd psych admit[tance] since March 2021. 1st psychosis noted in March 2021 when [Respondent] hospitalized at Old Vineyard. [Respondent] had taken off and driven for long periods when unwell in the past and more recently. Family report he is having poor sleep. [Respondent] recently fired from job a week ago due to poor performance. [Respondent] needs inpatient hospitalization for safety/stabilization.

This matter came on for hearing on 7 April 2022 in Wake County District Court.[2] The trial court heard testimony from Respondent, Respondent's father, and Dr. Clayton, and on 11 April 2022, the court entered an Involuntary Commitment Order. In the order, the trial court marked boxes indicating that Respondent was mentally ill and dangerous to himself. To support those conclusions, the trial court marked another box that stated: "Based on the evidence presented, the Court . . . by clear, cogent, and convincing evidence finds . . . facts supporting involuntary commitment"; the court attached to the order and incorporated by reference a document titled "Findings of Fact in Support of Inpatient Commitment." The trial court found, in relevant part, the following additional facts in support of involuntary commitment:

### I. As to Mental Illness

The Court finds by clear, cogent, and convincing evidence that . . . Respondent suffers from a mental illness — specifically, the mental illness of schizophrenia. . . .

. . . .

### II. As to Dangerousness to Self

The Court also finds by clear, cogent, and convincing evidence that . . . Respondent is dangerous to self because within the relevant past he has acted in such a way as to show that he would be unable, without care, supervision,

---

[2] A transcript of the commitment hearing, which was conducted via Webex, was unavailable due to a malfunction in the recording equipment. In lieu of a transcript, the parties requested that the hearing participants submit their notes and written recollections of the testimony in narrative form, pursuant to N.C.R. App. P. 9(c)(1). The participants' responses are included in the record on appeal, which was settled by the parties' stipulation and agreement. *See* N.C.R. App. P. 11(b).

and the continued assistance of others not otherwise available to exercise self-control, judgment, and discretion in the conduct of his daily responsibilities and social relations, and there is a reasonable probability of Respondent suffering serious physical debilitation within the near future unless adequate inpatient treatment is given. In support of this finding of ultimate fact, this Court finds the following evidentiary facts based upon the competent evidence from the hearing:

. . . .

3. Respondent's psychiatric state was declining prior to his admission to Wake[B]rook as evidenced by the following events and behaviors occurring within the relevant past:

 i. In June 2021 Respondent believed himself to be involved with the FBI and drove to northern Virginia for this reason. Similarly, in August or September 2021 Respondent believed himself to be President of the United States and drove to Washington DC for this reason.

 ii. In January 2022 Respondent quit taking medication prescribed for the treatment of his mental illness. He did so because he did not like the medicine, and because he had secured a job driving for Amazon.

 iii. After becoming medication non-compliant, Respondent began talking and laughing to himself with increasing frequency and regularity. He also regularly paced throughout his home and his sleep habits changed. . . .

 . . . .

 vi. During this time Respondent lost his delivery job with Amazon, having held it for only approximately two weeks. He held his prior delivery job with UPS for more than one year, and

4

Respondent's father attributed the loss of the Amazon job to Respondent's increasingly erratic behavior.

. . . .

ix. When Respondent arrived at Wake[B]rook['s] Crisis and Assessment unit on 28 March 2022 he displayed delusional and disorganized thought processes as well as thought blocking, endorsed auditory hallucinations, displayed a blunted affect, and was observed responding to internal stimuli.

4. Since being admitted to Wake[B]rook['s] Inpatient unit on 29 March 2022 Respondent has continued to display many of these same symptoms. . . . In addition, he has resisted cooperating with lab-work and his medication regimen.

5. It is the opinion of Dr. Clayton that when Respondent arrived at Wake[B]rook on 28 March 2022 he was acutely psychotic. Further, it is the opinion of Dr. Clayton that Respondent remains acutely psychotic as of the date of this hearing. This Court finds Dr. Clayton's opinions to be credible. If released from Wake[B]rook in this current condition, Respondent's state of acute psychosis makes it reasonably probable that he would suffer serious physical debilitation within the near future. Further inpatient treatment at Wake[B]rook is therefore required to prevent such a result.

6. It is the opinion of Dr. Clayton that Respondent has really poor insight [in]to his mental illness, and has no insight into the fact that he is currently acutely psychotic. This Court finds Dr. Clayton's opinions to be credible, and concludes that Respondent has severely impaired insight and judgment. As a result, this Court concludes Respondent is currently unable to care for himself. This conclusion is further supported by Respondent's testimony regarding his plans for discharge. If released from Wake[B]rook in this current condition, Respondent's

inability to care for himself makes it reasonably probable that he would suffer serious physical debilitation within the near future. Further inpatient treatment at Wake[B]rook is therefore required to prevent such a result.

7. Respondent's delusional, disorganized, and irrational thought content continues to motivate his actions, and is inconsistent with a person who has the ability to care [for] himself. If released from Wake[B]rook in this current condition, Respondent's inability to care for himself makes it reasonably probable that he would suffer serious physical debilitation within the near future. Further inpatient treatment at Wake[B]rook is therefore required to prevent such a result.

. . . .

9. Respondent does not believe that anything is wrong with him, does not believe that he needs any medication, and has testified that he will not take the medication once discharged from Wake[B]rook. He ceased voluntarily taking his medication while in the community prior to coming to Wake[B]rook, and at various times since arriving at Wake[B]rook has been resistive to voluntarily taking the medication. . . .

10. It is the opinion of Dr. Clayton that if discharged in his current condition Respondent would not comply with any treatment regimen and that an abrupt psychiatric decompensation would result. This Court finds Dr. Clayton['s] opinion to be credible.

11. The Court concludes based on these facts that Respondent — if released in his current condition — will immediately become medication non-compliant.

12. If released before an effective medication regimen can be established or if Respondent becomes non-compliant with an effective regimen, this Court finds that it is reasonably probable that a rapid decline in Respondent's psychiatric condition would occur in the near future, with a reemergence in the acutely psychotic

symptoms that caused him to present to Wake[B]rook on 28 March 2022. A rapid decline in Respondent's psychiatric condition would make it reasonably probable that Respondent would suffer serious physical debilitation within the near future. Further inpatient treatment at Wake[B]rook is therefore required to prevent such a result.

The trial court ordered that Respondent be committed for 60 days to UNC Hospitals at WakeBrook. Respondent timely appealed.

## *Discussion*

On appeal, Respondent argues that the trial court erred by involuntarily committing Respondent because the evidence did not support the court's finding that it was "reasonably probable that Respondent would suffer serious physical debilitation within the near future" absent inpatient mental health treatment, and thus there was no support for the court's determination that Respondent was "dangerous to himself[.]"

As a preliminary matter, we note that although Respondent's Involuntary Commitment Order has expired, the argument before us is not moot because "the challenged judgment may cause collateral legal consequences for the appellant." *In re Booker*, 193 N.C. App. 433, 436, 667 S.E.2d 302, 304 (2008); *see also, e.g., In re C.G.*, 383 N.C. 224, 236, 881 S.E.2d 534, 543 (2022) ("Although the involuntary commitment order at issue in this case has long since expired, [the] respondent's appeal is not moot.").

When deciding whether to involuntarily commit an individual for inpatient treatment, the trial court must make two specific findings "by clear, cogent, and convincing evidence[.]" N.C. Gen. Stat. § 122C-268(j) (2021). The trial court must first find "that the respondent is mentally ill[.]" *Id.* The trial court must then find that the respondent is "dangerous to self . . . or dangerous to others[.]" *Id.* In its order, the trial court "shall record the facts that support its findings." *Id.*

Upon review of a commitment order, we "determine whether the ultimate finding[s] concerning the respondent's [mental illness and] danger to [him]self . . . [are] supported by the court's underlying findings, and whether those underlying findings, in turn, are supported by competent evidence." *In re W.R.D.*, 248 N.C. App. 512, 515, 790 S.E.2d 344, 347 (2016). The required findings "must actually be made by the trial court and cannot simply be inferred from the record." *C.G.*, 383 N.C. at 240, 881 S.E.2d at 546 (citation and internal quotation marks omitted). "However, it is for the trier of fact to determine whether the competent evidence offered in a particular case met the burden of proof, that is, whether the evidence of [the] respondent's mental illness and dangerousness was clear, cogent and convincing." *In re J.P.S.*, 264 N.C. App. 58, 61, 823 S.E.2d 917, 920 (2019) (citation and internal quotation marks omitted).

In the instant case, Respondent challenges whether there was evidentiary support for the trial court's determination that he was "dangerous to himself." According to the definition set forth by our General Assembly, an individual is

"dangerous to self" if the individual has done any of the following "[w]ithin the relevant past":

> 1. The individual has acted in such a way as to show all of the following:
>
>> I. The individual would be unable, without care, supervision, and the continued assistance of others not otherwise available, to exercise self-control, judgment, and discretion in the conduct of the individual's daily responsibilities and social relations, or to satisfy the individual's need for nourishment, personal or medical care, shelter, or self-protection and safety.
>>
>> II. There is a reasonable probability of the individual's suffering serious physical debilitation within the near future unless adequate treatment is given pursuant to [Chapter 122C]. A showing of behavior that is grossly irrational, of actions that the individual is unable to control, of behavior that is grossly inappropriate to the situation, or of other evidence of severely impaired insight and judgment shall create a prima facie inference that the individual is unable to care for himself or herself.
>
> 2. The individual has attempted suicide or threatened suicide and that there is a reasonable probability of suicide unless adequate treatment is given pursuant to [Chapter 122C].
>
> 3. The individual has mutilated himself or herself or has attempted to mutilate himself or herself and that there is a reasonable probability of serious self-mutilation unless adequate treatment is given pursuant to [Chapter 122C].
>
> Previous episodes of dangerousness to self, when applicable, may be considered when determining reasonable probability of physical debilitation, suicide, or self-mutilation.

N.C. Gen. Stat. § 122C-3(11)(a).

"The trial court must find sufficient evidence to support one of the three prongs of this statute in order to conclude that an individual is a danger to himself." *J.P.S.*, 264 N.C. App. at 62, 823 S.E.2d at 920–21; *see also* N.C. Gen. Stat. § 122C-3(11)(a).

The "trial court's involuntary commitment of a person cannot be based solely on findings of the individual's history of mental illness or behavior prior to and leading up to the commitment hearing, but must include findings of a reasonable probability of some future harm absent treatment as required by" § 122C-3(11)(a). *J.P.S.*, 264 N.C. App. at 62, 823 S.E.2d at 921 (citation and internal quotation marks omitted). "Any commitment order that fails to include such findings is insufficient to support its conclusions that the respondent presented a danger to himself and others." *Id.* (citation and internal quotation marks omitted).

Here, Respondent does not challenge the trial court's ultimate finding that Respondent is mentally ill, as evinced by his schizophrenia diagnosis. Instead, Respondent argues that the trial court's ultimate finding that he posed a danger to himself was not supported by its underlying findings, which, in turn, were not supported by the evidence. We disagree.

As noted above, to establish dangerousness to self, N.C. Gen. Stat. § 122C-3(11)(a)(1) requires a showing of: (1) the individual's inability without assistance to either "exercise self-control, judgment, and discretion" when carrying out daily responsibilities, or "satisfy the individual's need for nourishment, personal or medical

care, shelter, or self-protection and safety"; *and* (2) "a reasonable probability of the individual's suffering serious physical debilitation within the near future unless adequate treatment is given[.]" N.C. Gen. Stat. § 122C-3(11)(a)(1).

Here, the trial court's underlying findings are supported by the evidence, and they are adequate to sustain the court's determination that Respondent was dangerous to himself. First, there was ample evidence by way of Dr. Clayton's testimony that in Respondent's current "state of acute psychosis" he suffers from "severely impaired insight and judgment" and is "unable to care for himself" adequately, making it "reasonably probable that he would suffer serious physical debilitation within the near future" in the absence of inpatient mental health treatment.

There was also substantial evidence that "Respondent — if released in his current condition [of acute psychosis] — will immediately become medication non-compliant[,]" rendering it even more likely that he will suffer serious physical debilitation in the near future in the absence of inpatient mental health treatment. Respondent's father testified that Respondent previously ceased taking his medication because he "did not like" the medication; Dr. Clayton testified that Respondent "had repeatedly stated [during his assessments] that he would stop medication and not follow up with any outpatient mental health treatment on discharge"; and Respondent testified that he would not take his medication because he believed that he did not suffer from any mental illness.

Dr. Clayton explained that if Respondent were to become non-compliant with his medication, "she would expect Respondent to experience a worsening of his psychotic symptoms in the near future." She stated that during his commitment at WakeBrook, Respondent displayed symptoms of hearing voices, responding to internal stimuli, experiencing delusions and paranoia, having disorganized thinking with "thought blocking," and demonstrating poor concentration and memory issues. Respondent's father also testified that Respondent's mental condition had worsened previously when he stopped participating in his mental health treatment, which caused Respondent to "laugh[ ] to himself, talk[ ] to himself, and pac[e] around the home for 5-10 minutes at a time."

Based on this evidence, the trial court found that Respondent "has severely impaired insight and judgment[,]"and is unable to care for himself. *See id.* § 122C-3(11)(a)(1)(II). The trial court then directly linked Respondent's inability to care for himself based on his past behavior and current symptoms to a risk of future harm: "If released from Wake[B]rook in this current condition, Respondent's inability to care for himself makes it reasonably probable that he would suffer serious physical debilitation within the near future." In so finding, the trial court appropriately drew the requisite "nexus between [R]espondent's past conduct and future danger." *C.G.*, 383 N.C. at 249, 881 S.E.2d at 551 (citation omitted).

We conclude that the trial court made the "forward-looking findings of fact" necessary to support its ultimate finding of a reasonable probability that Respondent

would suffer serious physical debilitation in the near future absent inpatient mental health treatment, and that these findings were supported by the evidence. *Id.* at 250, 881 S.E.2d at 552 (Newby, C.J., concurring in part and dissenting in part). Thus, the trial court's findings support the court's determination that Respondent suffers from mental illness and poses a danger to himself, warranting involuntary commitment for inpatient mental health treatment.

### *Conclusion*

For the foregoing reasons, we affirm the Involuntary Commitment Order.

AFFIRMED.

Judge GORE concurs.

Judge TYSON dissents by separate opinion.

No. COA22-639 – *In re D.H.*

TYSON, Judge, dissenting.

The trial court failed to draw the requisite "nexus between the [R]espondent's past conduct and future danger" to reach the conclusion it was reasonably probable Respondent would suffer serious physical debilitation within the near future. *In re C.G.*, 383 N.C. 224, 249, 2022-NCSC-123, ¶ 41, 881 S.E.2d 534, 551 (2022) (citation, internal quotation marks, and alterations omitted). Even if Respondent reverted to his prior behaviors, petitioner's evidence and the record demonstrates his past psychotic symptoms and delusions were neither harmful to himself nor others to warrant involuntary commitment. Respondent's past symptoms alone cannot serve as a sufficient basis of future danger to support the trial court's conclusion. The trial court's order is properly vacated and remanded. I respectfully dissent.

## I. Standard of Review

"The State's burden of proof to deprive Respondent of [his] liberty demands competent and relevant evidence and findings of fact to be based upon clear, cogent, and convincing evidence at the involuntary commitment hearing." *In re E.B. AAU/MPU Wards Granville Cnty.*, __ N.C. App. __, __, 2022-NCCOA-839, ¶ 15, 882 S.E.2d 379, 383 (2022).

"The trial court's conclusions of law to involuntarily commit and deprive Respondent of [his] liberty must be supported by its findings of fact and supporting evidence on each required statutory element and those conclusions are reviewed *de novo* on appeal." *Id.* at __, ¶ 17, 882 S.E.2d at 384. This Court reviews "the trial

court's commitment order to determine whether the ultimate finding concerning the respondent's danger to self or others is supported by the court's underlying findings, and whether those underlying findings, in turn, are supported by competent evidence" meeting the required burden of proof. *In re W.R.D.*, 248 N.C. App. 512, 515, 790 S.E.2d 344, 347 (2016). Here, they are not.

## II. Analysis

Petitioner's showing and the trial court's findings are not supported by sufficient evidence to deny Respondent his liberties.

> To find danger to self in these circumstances, the trial court must find that Respondent "would be unable, without care, supervision, and the continued assistance of others not otherwise available, to exercise self-control, judgment, and discretion in the conduct of his daily responsibilities and social relations, or to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety" and that "there is a reasonable probability of his suffering serious physical debilitation within the near future" without involuntary commitment.

*Id.* (citing N.C. Gen. Stat. § 122C-3(11) (2021)). As the majority's opinion correctly notes, the lack of transcript makes this Court's review more difficult.

The trial court concluded it was "reasonably probable that Respondent would suffer serious physical debilitation within the near future", if Respondent were released. The trial court based its conclusion on the testimony from Dr. Nancy Clayton, who testified for the State and predicted "it [wa]s reasonably probable that a rapid decline in Respondent's psychiatric condition would occur in the near future,

with a reemergence [sic] in the acutely psychotic symptoms that caused him to present to Wakebrook on 28 March 2022."

The trial court made several findings about Respondent's past symptoms and history of mental illness as well as Respondent's current state. Respondent suffered from a declining psychiatric state and delusions prior to his admission to Wakebrook. Respondent hallucinated and occasionally traveled because of his delusions. For example, Respondent drove to Northern Virginia because he believed he was in the FBI, and he drove to Washington D.C. because he believed he was the President. At one point, Respondent told his father he was the "Emperor of Japan."

After Respondent stopped taking his medication, he started laughing and talking to himself; his sleep habits changed; he lost his job as an Amazon driver; and, he left the scene as law enforcement approached his vehicle at a gas station. None of these findings demonstrate how Respondent's actions support a finding of future danger to himself or others when experiencing delusions or psychotic symptoms. No loss of liberty comes by one fantasizing or believing they are someone or something they are not. Others share or profess the same or similar, or even more bizarre delusions, as Respondent, who are not involuntarily committed.

Respondent's non-aggressive, non-violent history is insufficient to support finding Respondent will be a harm to himself or others in the future to warrant an involuntary commitment as opposed to home or provider-based treatments. A trial court finding that "Respondent's history of mental illness or her behavior prior to and

leading up to the commitment hearing[ ] . . . do[es] not indicate that these circumstances rendered Respondent a danger to herself or himself in the future." *In re Whatley*, 224 N.C. App. 267, 273, 736 S.E.2d 527, 531 (2012).

The present case is distinguishable from *In re Moore*, wherein an individual displayed aggressive, harmful tendencies without medication, and the trial court had evidence such behavior would return if the individual was released from involuntary commitment without medical treatment. 234 N.C. App. 37, 39, 758 S.E.2d 33, 35 (2014).

Similarly, this Court affirmed an order for involuntary commitment where an individual suffered from schizophrenic delusions, which caused her to believe she had blockages in her bodily systems and, when unmedicated, would self-medicate with extreme amounts of laxatives and conduct internal self-examinations. *In re E.B.*, __ N.C. App. at __, ¶ 10-11, 33-35, 882 S.E.2d at 382-83, 386. The trial court supported its conclusion with evidence the individual was presently a danger to herself and releasing her would result in immediate physical debilitations. *Id.* at __, ¶ 29-32, 882 S.E.2d at 386. Here, we have no such evidence or findings indicating Respondent would suffer immediate physical debilitations or engage in aggressive, harmful tendencies upon release. Sufficient evidence does not overcome the presumption of Respondent's sanity and right of liberty to support a finding or conclusion of future danger to self or others to involuntarily commit.

IN RE D.H.

*TYSON, J., dissenting*

Additionally, the trial court's conclusion Respondent would be unable to care for himself is insufficient to support its finding that Respondent will "suffer serious physical debilitation in the near future." "[F]indings that an individual suffers from a mental illness, exhibits symptoms associated with that mental illness, and may not be able to take care of his or her needs are not sufficient to satisfy the second prong of the statutory test for the presence of a 'danger to self.'" *In re C.G.*, 383 N.C. at 246, ¶ 38, 881 S.E.2d at 549. The trial court "*must draw a nexus between past conduct and future danger.*" *Id.* at 246, ¶ 37, 881 S.E.2d at 549 (emphasis original) (citation and quotation marks omitted).

The trial court's finding that "Respondent would not comply with any treatment regimen and that an abrupt psychiatric decompensation would result" is speculative, unsupported and not sufficient to order involuntary commitment. A finding that an individual does not plan to continue treatment, without evidence of future harm, does not support an ultimate finding of "dangerous to self." *See In re Whatley*, 224 N.C. App. at 273, 736 S.E.2d at 531 (citing N.C. Gen. Stat. § 122C-3(11)(a)(1)). Again, the evidence does not support a finding Respondent's state without treatment is or will be harmful to himself or others in the future.

A person's decision to reduce or discontinue prescribed medication is also not evidence or a basis to support an involuntary commitment. *In re N.U.*, 270 N.C. App. 427, 432-33, 840 S.E.2d 296, 300 (2020) ("[T]he findings that Respondent lacks 'insight into her mental illness' and is 'unable to care for herself for daily

- 5 -

responsibilities and taking medications' are also insufficient to show that Respondent was a danger to herself as there is 'no evidence that Respondent's refusal to take [her] medication creates a serious health risk in the near future.'") (citation omitted); *accord In re W.R.D.*, 248 N.C. App. at 516, 790 S.E.2d at 348 (explaining that findings indicating respondent "refus[ed] to acknowledge his mental illness, and refus[ed] to take his prescription medication" failed to demonstrate how a "health risk w[ould] occur in the near future") (citation and internal quotation marks omitted). The trial court's findings are insufficient to support a conclusion and order of involuntary commitment. *In re Whatley*, 224 N.C. App. at 273, 736 S.E.2d at 531.

## III.    Conclusion

This Court cannot affirm a conclusion and order of involuntary commitment without findings based upon clear, competent evidence supporting such findings and conclusion of future harm to himself or others. N.C. Gen. Stat. § 122C-3(11). While the trial court attempts to project a connection between Respondent's past and present conduct with a future risk of harm, it fails to do so, as a lawful order "*must draw a nexus between past conduct and future danger.*" *In re C.G.*, 383 N.C. at 246, ¶ 37, 881 S.E.2d at 549 (emphasis original) (citation and quotation marks omitted). A person has a right to refuse treatment and medication without loss of freedom. *In re Whatley*, 224 N.C. App. at 273, 736 S.E.2d at 531; *In re N.U.*, 270 N.C. App. at 432-33, 840 S.E.2d at 300; *In re W.R.D.*, 248 N.C. App. at 516, 790 S.E.2d at 348. Respondent's past state, or even his present status, does not sufficiently prove he will

harm himself or others in the future to support involuntarily depriving him of his liberty.  *Id.*; *In re Whatley*, 224 N.C. App. at 273, 736 S.E.2d at 531.  The trial court's order is properly vacated and remanded.  I respectfully dissent.