An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-643

Filed 2 July 2025

Avery County, No. 13SPC000068-050

IN THE MATTER OF: E.W.P.

Appeal by Respondent from orders entered 17 May 2023 and 25 January 2024 by Judge Alan Z. Thornburg in Avery County Superior Court. Heard in the Court of Appeals 18 March 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Jordan W. Cansler, for the State.*

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender John F. Carella, for Respondent-Appellant.*

CARPENTER, Judge.

Respondent appeals from the trial court's 17 May 2023 and 25 January 2024 orders (collectively, the "Orders"), each concluding that Respondent did not meet his burden in proving that he was no longer a danger to others. On appeal, Respondent argues: (1) the trial court erred by concluding Respondent failed to meet his burden of proving that he is no longer a danger to others; (2) the trial court's factual findings do not support its ultimate finding that Respondent remains a danger to others; and

(3) competent evidence does not support the trial court's factual findings on dangerousness. After careful review, we affirm the Orders.

## I. Factual & Procedural Background

On 20 February 2003, Avery County Sheriff's Deputies Glenn Hicks and Ralph Coffey responded to a call from Respondent's daughter requesting a wellness check on Respondent at his residence. According to Respondent's daughter, Respondent was "looking at [his] guns" after experiencing delusions that someone had been in his house. Respondent was aware of the wellness check because he possessed a police scanner in his home and overheard "the call come over the scanner that the sheriff's department was coming out to check on" him.

When the deputies arrived at Respondent's residence and knocked on the front door, Respondent fatally shot Deputy Hicks in the head, and seriously injured Deputy Coffey by shooting him in the face and back. Deputy Coffey called for backup and when officers arrived, Respondent fled into the woods surrounding his residence. As he fled, Respondent stepped over Deputy Coffey, who was laying on the ground, and told Deputy Coffey that it was not Deputy Coffey's day to die. Respondent fled to a cave in the woods where a standoff with officers ensued. Respondent eventually exited the cave, surrendered with his firearm raised, and stated, "you go ahead, you got the shot, take it." Officers then arrested Respondent.

An Avery County grand jury indicted Respondent for first-degree murder, attempted first-degree murder, assault with a deadly weapon with intent to kill

inflicting serious injury, and two other felonies. While awaiting trial, Dr. Charles Vance and Dr. George P. Corvin evaluated Respondent for his capacity to proceed to trial. Dr. Vance's evaluation occurred between 29 December 2003 and 1 March 2004, resulting in his conclusion that Respondent was incapable of proceeding to trial. Dr. Corvin's evaluation occurred on 20 June 2005, resulting in his conclusion that Respondent continued to be incapable of proceeding to trial in light of his "on-going psychosis."

On 22 July 2005, the trial court conducted a hearing to determine Respondent's capacity to proceed to trial. The trial court found that Respondent lacked capacity to proceed to trial and committed him to Broughton Hospital in Morganton, North Carolina for psychiatric care and restoration of capacity.

On 27 September 2012, after treatment at Broughton Hospital, Dr. Mark Hazelrigg determined that Respondent's capacity to proceed to trial was restored. Then, between 14 May 2013 and 26 July 2013, Dr. Vance reexamined Respondent to evaluate his mental status on the day of the shootings. Dr. Vance concluded that Respondent was unaware of the wrongfulness of his actions on that day, attributable to active psychosis. On 27 September 2013, Dr. Corvin reexamined Respondent and agreed with Dr. Vance that Respondent was not criminally responsible for his actions on 20 February 2003. As a result, on 14 October 2013, the trial court found Respondent not guilty by reason of insanity of all charges and committed him to the State Forensic Unit at North Carolina Regional Hospital.

On 12 February 2014, the trial court conducted a recommitment hearing and recommitted Respondent for a period not to exceed 90 days. On 9 June 2014, the trial court conducted a second recommitment hearing and recommitted Respondent for a period not to exceed 180 days. From 2015 to 2022, the trial court conducted six recommitment hearings, each resulting in Respondent's recommitment for the following 365 days.

On 19 January 2023, the trial court conducted Respondent's ninth recommitment hearing and heard testimony from two of Respondent's medical providers, Dr. Nicole Wolfe and Dr. Joshua Vick. On 17 May 2023, the trial court entered an order concluding Respondent failed to prove by a preponderance of the evidence that he was no longer a danger to others. The trial court recommitted Respondent for a period not to exceed 365 days. On 31 May 2023, Respondent gave notice of appeal from the 2023 order.[1]

On 10 January 2024, the trial court conducted Respondent's tenth recommitment hearing and heard testimony from Dr. Wolfe and Dr. Vick, consistent with their 2023 testimony. On 25 January 2024, the trial court entered an order concluding Respondent failed to prove by a preponderance of the evidence that he was no longer a danger to others. The trial court recommitted Respondent for a period

---

[1] Regarding the 2023 appeal, no appellate entries were issued until 2 November 2023. The appellate entries were filed and served on the transcriptionist on 6 November 2023. But, on 10 January 2024, Respondent's case came on for the next annual recommitment hearing before the 2023 transcripts were delivered.

not to exceed 365 days. On 31 January 2024, Respondent filed notice of appeal from the 2024 order.

## II. Jurisdiction

As an initial matter, we note that the Orders, each resulting in Respondent's recommitment for a period not to exceed 365 days, have expired. Nonetheless, Respondent's arguments are not moot because "the challenged judgment[s] may cause collateral legal consequences for the appellant." *See In re Booker*, 193 N.C. App. 433, 436, 667 S.E.2d 302, 304 (2008); *In re Hatley*, 291 N.C. 693, 695, 231 S.E.2d 633, 635 (1977) ("The possibility that respondent's commitment in this case might likewise form the basis for a future commitment, along with other obvious collateral legal consequences, convinces us that this appeal is not moot."). Accordingly, this Court has jurisdiction under N.C. Gen. Stat. §§ 7A-27(b)(2) and 122C-272 (2023).

## III. Issues

The issues are whether: (1) the trial court erred by concluding Respondent failed to meet his burden of proving that he is no longer a danger to others; (2) the trial court's factual findings support its ultimate finding that Respondent remains a danger to others; and (3) competent evidence supports the trial court's factual findings on dangerousness.[2]

---

[2] Respondent challenges the Orders for the "same reasons." The challenged findings in the 2024 order include the same information as the challenged findings in the 2023 order, and the evidence presented at the hearings was nearly identical. Accordingly, we address the Orders under the same analysis.

## IV. Analysis

Respondent argues the trial court erred by concluding he failed to prove he is no longer a danger to others and making the ultimate finding that he remained a danger to others. Specifically, Respondent contends the trial court's ultimate finding on dangerousness was not supported by sufficient findings of fact and record evidence. We disagree.

We review recommitment orders under the same standard of review as we do commitment orders. *In re Hayes*, 151 N.C. App. 27, 29, 564 S.E.2d 305, 307 (2002) ("We see no reason to distinguish the standard of review of a recommitment order from that of a commitment order . . . ."). In reviewing a commitment order, we consider: "(1) whether the court's ultimate findings are indeed supported by the 'facts' which the court recorded in its order as supporting its findings, and (2) whether in any event there was competent evidence to support the court's findings." *In re Hogan*, 32 N.C. App. 429, 433, 232 S.E.2d 492, 494 (1977). When findings are supported by competent evidence, they are "conclusive on appeal even though the evidence might support a finding to the contrary." *In re McCabe*, 157 N.C. App. 673, 679, 580 S.E.2d 69, 73 (2003) (citation omitted). Unchallenged findings of fact are "presumed to be supported by competent evidence and are binding on appeal." *State v. Baker*, 312 N.C. 34, 37, 320 S.E.2d 670, 673 (1984).

### A. Respondent's Burden of Proof

First, Respondent argues the trial court erred by concluding he did not meet his burden of proving that he was no longer a danger to others.

Respondent was acquitted by reason of insanity from the charges stemming from the 20 February 2003 incident. Thus, the following burden of proof applied at Respondent's recommitment hearings:

> The respondent shall bear the burden to prove by a preponderance of the evidence that he (i) no longer has a mental illness . . . , or (ii) is no longer dangerous to others . . . . If the court is so satisfied, then the court shall order the respondent discharged and released. If the court finds that the respondent has not met his burden of proof, then the court shall order inpatient commitment be continued . . . .

N.C. Gen. Stat. § 122C-276.1(c), (d) (2023).

Here, the trial court concluded Respondent did not meet his burden in proving that he no longer remained a danger to others. By arguing the trial court erroneously reached this conclusion, Respondent essentially requests that we reweigh the evidence in his favor. *See In re Bullock*, 229 N.C. App. 373, 377, 748 S.E.2d 27, 30 (2013). Because "[i]t is not [a] function of this Court to reweigh the evidence on appeal," we conclude Respondent's argument is meritless. *See id.* at 377, 748 S.E.2d at 30.

**B. Findings 8b, 8c, and 8f**

Next, Respondent argues that three findings of fact do not support the trial court's ultimate finding on dangerousness. Specifically, Respondent challenges the following findings:

(8b). On February 20, 2003 Respondent committed murder by killing Avery County Sheriff's Deputy Glenn Hicks, and shot and seriously wounded Avery County Sheriff's Deputy Ralph Coffey. This murder was committed within the relevant past, and is directly relevant to . . . [the] assessment of Respondent's dangerousness to others.

(8c). The Respondent does not fully understand that his actions on February 20, 2003 were irrational, unjustified and delusional, nor does he take responsibility for the deaths as evidenced by his testimony in the January 10, 2024 hearing.

(8f). The Respondent continues to minimize his own responsibility for the events of February 20, 2003 and his delusional ideations continue.

Respondent does not challenge finding 8a, which incorporates "all previous findings of fact related to Respondent's mental illness, and relies upon them in support of [the] finding regarding dangerousness."

In entering a commitment order, the trial court must make two ultimate findings: (1) the respondent is mentally ill, and (2) the respondent is imminently dangerous to themselves or others. *In re Doty*, 38 N.C. App. 233, 234, 247 S.E.2d 628, 629 (1978) (citations omitted); N.C. Gen. Stat. § 122C-268(j) (2023). A person is a danger to others when:

> (1) Within the [relevant] past
> (2) Respondent has
> > (a) inflicted serious bodily harm on another, or
> > (b) attempted to inflict serious bodily harm on another, or
> > (c) threatened to inflict serious bodily harm on another, or

(d) has acted in such a manner as to create a substantial risk of serious bodily harm to another, [or (e) has engaged in extreme destruction of property,] and
(3) There is a reasonable probability that such conduct will occur again.

*In re J.P.S.*, 264 N.C. App. 58, 63–64, 823 S.E.2d 917, 921–22 (2019) (emphasis omitted). There is no specific language required for the trial court's findings of fact; the findings need only show a "nexus between past conduct and future danger." *Id.* at 64, 823 S.E.2d at 922.

Through finding 8a, the trial court explained that its previous findings of fact concerning Respondent's mental illness, which are unchallenged, apply to its ultimate finding on dangerousness. The previous findings of fact include summaries of the testimony provided by Respondent's doctors. Combining these findings with challenged findings 8b, 8c, and 8f, the trial court established that within Respondent's relevant past, he inflicted serious bodily harm on others, he acted in such a manner as to create a substantial risk of serious bodily harm, and there is a reasonable probability that such conduct will occur again. *See id.* at 63–64, 823 S.E.2d at 921–22. In particular, the findings demonstrate that Respondent is likely to suffer for the rest of his life from the same delusional disorder that caused him to fatally shoot an officer and seriously injure another. The findings also show that by not recognizing the nature of these actions and how they resulted from his paranoid delusions, Respondent fails to demonstrate an appreciation of the risks that stem

from his delusional disorder. Moreover, Respondent's delusional disorder is triggered by delirium that occurs when he refuses to comply with treatment regarding his various physical medical conditions, and Respondent has a recent history of noncompliance. Thus, Respondent's noncompliance creates a risk that he will experience the same type of paranoid delusions which caused him to fatally shoot an officer and seriously injure another on 20 February 2003. Accordingly, findings 8b, 8c, and 8f support the trial court's ultimate finding on dangerousness because the trial court showed a "nexus between [Respondent's] past conduct and future danger" to others. *See id.* at 64, 823 S.E.2d at 922.

## C. Findings 8d and 8e

Finally, Respondent argues the following findings of fact are not supported by competent evidence:

> (8d). Although [Respondent's] current regimen of antipsychotic medication in the controlled environment of Central Regional Hospital has minimized his short-term dangerousness to others, nevertheless he remains a long-term danger to others. He lacks full insight into his mental illness, and his symptoms, including paranoid delusions, would recur if he stopped taking the medications which he is currently receiving. Based upon his prior history, it is possible that he would voluntarily stop taking those medications if it were in his power to do so. The probability of the recurrence of his paranoid delusions if he should stop taking his medications poses a continued danger to others. Respondent has shown in the past that he has experienced periods of delirium and paranoia while the Respondent was compliant with his current mental health regimen.

> (8e). The [trial court] finds based on the evidence presented at this hearing that if the Respondent were not compliant with his medical treatment it will result in an alteration in his mental status that will result in delirium and paranoia that will cause him to be a danger to others. Due to Respondents lack of understanding into his medical concerns it is likely that if he were in a lower level of care it is unlikely that the Respondent will remain compliant with his medical regimen.

Testimony from Dr. Vick and Dr. Wolfe, however, directly supports findings 8d and 8e. Specifically, their testimony demonstrates that Respondent experienced recent episodes of paranoid delusions where he feared he was the target of violence. Respondent's recent delusions are substantially similar to those which caused him to him fatally shoot an officer and seriously injure another. Furthermore, Respondent's recent paranoid delusions are delirium-based because they are brought on by changes in his physical medical conditions, such as a change in blood pressure medication and development of a UTI.

Moreover, Respondent experiences delirium when he refuses to comply with medical treatment, and treatment of the underlying medical condition generally ends the delirium. Respondent frequently refuses to attend medical appointments and comply with treatment for inconsequential reasons, including him "not feeling like it" or not wanting to be transported by a particular staff member. Respondent's repeated noncompliance with medical treatment raises concerns that if he were not in a supervised setting, his noncompliance would continue and result in further delirium. Through his noncompliance, Respondent shows impaired judgment which renders

him acutely dangerous because he risks suffering from paranoid delusions brought on by delirium when he does not comply with his medical treatment. Accordingly, competent evidence supports findings 8d and 8e. *See In re McCabe*, 157 N.C. App. at 679, 580 S.E.2d at 73.

## V. Conclusion

The trial court did not err by concluding Respondent did not meet his burden of proving he was no longer a danger to others. Additionally, the trial court's ultimate finding that Respondent remained a danger to others is supported by the trial court's factual findings, which are supported by competent evidence. Accordingly, we affirm the Orders.

AFFIRMED.

Chief Judge DILLON and Judge GRIFFIN concur.

Report per Rule 30(e).